No. 86-218

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

MAURICE DEAN PRIEST,

       Plaintiff, Respondent and
       Cross-Appellant,

-vs-

LAWRENCE TAYLOR, JR., PEARL R.
TAYLOR, and LARRY KEVIN TAYLOR, JR.,
a minor,

       Defendants, Appellants, and
       Cross-Respondents,

   and

LINDA PRIEST,

       Plaintiff and Appellant,

-vs-

LAWRENCE TAYLOR, JR., PEARL R. TAYLOR,
and LARRY KEVIN TAYLOR, JR., a minor,

       Defendants and Respondent.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
             In and for the County of Yellowstone,
             The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Landoe, Brown, Planalp, Kommers & Johnstone; Gene
        I. Brown, Bozeman, Montana

    For Respondent:

        Robert L. Stephens, Jr., Billings, Montana

---

Submitted on Briefs: May 18, 1987

Decided: July 13, 1987

JUL 13 1987

Filed:

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Defendants Lawrence Taylor, Jr., Pearl Taylor and Larry Kevin Taylor, Jr., (Taylors) appeal a Yellowstone County District Court order granting a new trial to the plaintiff Maurice Priest in this personal injury action. Mr. Priest and his wife Linda cross appeal from a district court order denying their motion to file an amended complaint. Maurice Priest also cross appeals on one issue relating to voir dire. The issues are,

1) whether the court properly granted a new trial to plaintiff because;

   a) the court failed to specifically instruct the jury on defendants' burden to show what part of plaintiff's injuries were attributable to his preexisting condition; and/or,

   b) the court failed to instruct the jury on the aggravation of plaintiff's preexisting mental condition;

2) whether the court erred in denying the Priests' motion to amend the complaint to include an action for loss of consortium;

3) whether the court improperly refused to allow plaintiff to use certain exhibits during voir dire. We affirm the grant of a new trial and the ruling in regard to voir dire. We reverse the order denying the motion to amend the complaint.

On August 28, 1982, plaintiff was involved in an automobile accident in Billings, Montana. A car driven by Larry Kevin Taylor, Jr., a minor, struck the plaintiff's car from the rear. Prior to the accident, plaintiff had a

history of rather severe mental illness and of injuries to his right shoulder and/or back.

In May 1984, plaintiff filed a complaint in Yellowstone County District Court alleging that Larry Kevin Taylor, Jr., had negligently and recklessly caused the accident. The complaint also sought to impute Larry's alleged negligence to his parents, Lawrence and Pearl Taylor, under § 61-5-108(2), MCA. On August 28, 1985, plaintiff and his wife Linda moved (1) to amend the complaint by adding Linda Priest as a party plaintiff to assert her claim for loss of consortium, or (2) in the alternative, that the amended complaint be allowed to proceed as an independent, separate action on behalf of Linda. In October 1985, the court denied the motion to amend reasoning that 1) Rule 15, M.R.Civ.P., allows a party to amend his pleadings under certain circumstances; 2) this motion to amend sought to add an additional person as a party to assert a new claim; 3) the wife was not a party as contemplated by Rule 15; and 4) therefore, the motion was not truly a motion to amend under Rule 15.

This action went to trial in November 1985. During voir dire, plaintiff's counsel attempted to use five signs upon which were printed legal words or phrases and explanatory comments. The phrases were "proximate cause," "burden of proof," "preexisting condition" and "damages." Plaintiff hoped to explore the jurors' opinions, if any, on these concepts. The court disallowed the use of the signs.

The court and the parties' counsel struggled for some time attempting to formulate proper jury instructions on two issues; i.e., (1) the aggravation of preexisting conditions and (2) the burden of proof as to the aggravation of injury and as to the divisibility of injury. Ultimately, jury found for the plaintiff, awarding him $15,100. The plaintiff moved for a new trial and that motion was granted. The court ruled

3

that it committed two errors in instructing the jury. One error was the failure to instruct the jury that once the plaintiff had satisfactorily proved that the accident aggravated his preexisting condition, the burden of proof shifted to the defendants to show what portion of plaintiff's damages was attributable to the accident and what portion was attributable to the preexisting condition. The second error related to instructing the jury on the aggravation of plaintiff's preexisting mental condition. Defendants appeal the grant of a new trial.

The standard of review is clear.

> Whether to grant or deny a new trial is within the sound discretion of the trial court, (citation omitted), and will not be overturned absent a showing of manifest abuse of that discretion. (Citation omitted.)

Walter v. Evans Products Co. (Mont. 1983), 672 P.2d 613, 616, 40 St.Rep. 1844, 1847.

We first address the court's ruling as to the burden of proof on the apportionment of damages. The court gave two general instructions on the burden of proof and apportioning damages. Instruction number 2 defined "preponderance of the evidence" and instructed that a party asserting the affirmative of an issue has the burden of proving that issue by a preponderance of the evidence. Instruction number 22 stated in pertinent part,

> If you find that the plaintiff's pre-existing physical condition was aggravated by the accident, then it is your duty to try to apportion the harm sustained by the plaintiff between his pre-existing conditions and the harm contributed to or aggravated by the accident, if any.

4

> If you find that such harm is divisible,
> you may award only such damages as you
> may attribute to the accident. But, if
> you find that the harm caused is not
> divisible then, in such event, you must
> award damages to compensate the plaintiff
> for all of the harm he has sustained.

As stated, one of the grounds for the grant of a new trial was the failure to instruct the jury that once the plaintiff had satisfactorily proved the accident aggravated his preexisting condition, the burden of proof shifted to the defendant to prove the proper apportionment of damages. The lower court apparently reasoned that such an instruction was required by Azure v. City of Billings (1979), 182 Mont. 234, 596 P.2d 460. Azure involved two joint tortfeasors who were potentially jointly and severally liable for the entire judgment. In that situation, this Court stated:

> But where the harm caused is
> theoretically divisible, plaintiff's
> burden is to make a prima facie showing
> that the harm caused was at least a
> contributing proximate result of the
> defendant's act or omission. The burden
> then shifts to the defendant to either
> deny all liability or to prove that the
> harm caused can be divided and the
> damages therefore apportioned.

Azure, 596 P.2d at 471. Under Azure, the burden does shift to the defendant to establish apportionment between the joint tortfeasors. However, this Court has not explicitly ruled that the burden of proof shifts to the defendant to establish apportionment of damages between a preexisting condition and subsequent injury.

In Callihan v. Burlington Northern, Inc. (1982), 201 Mont. 350, 654 P.2d 972, we were presented with a plaintiff with a preexisting condition, a defendant and the possibility of an apportionment of damages between the preexisting

5

condition and the later accident. The defendant objected to that part of a jury instruction which advised the jury that, "But if you find that the evidence does not permit such an apportionment, then the defendant is liable for the entire disability." Callihan, 654 P.2d at 976. In upholding the propriety of that instruction, this Court cited the following reasoning from Azure,

> ". . . to impose upon the plaintiff the sometimes impossible burden of proving which tortious act did which harm, would be an expression of a judicial policy that it is better that a plaintiff, injured through no fault of his own, should take nothing simply because he could not prove which tortious act caused which harm. We believe on the other hand, that where the tortious act is established, it is better that the tortfeasor should be subject to paying more than his theoretical share of the damages in a situation where the tortious conduct has contributed to the confused situation making it difficult to prove which tortious act did the harm."

Callihan, 654 P.2d at 976, quoting Azure, 596 P.2d at 470-471. This Court held that the Azure rationale applied in Callihan, so that the single defendant would be liable for the entire disability if the evidence did not permit an apportionment between the preexisting condition and the aggravating accident.

The rationale behind the Azure rule (the burden of proof shifts to the defendant to establish apportionment after the plaintiff has met his initial burden) also applies in this situation. See 2 Minzer, Nates, Kimball, Axelrod and Goldstein, Damages In Tort Actions, § 15.34[1][a], p. 15-111, (1986); ("The plaintiff is not charged with a burden of proof as to the actual apportionment of damages in an aggravation case. Any burden of that nature must be assumed by the

6

defendant, since the defendant is the party standing to gain by litigating the apportionment issue.")  In an appropriate case, the instruction proposed by the District Court could be proper to <u>clarify</u> that the plaintiff <u>does not</u> have the burden of proving what portion of his disability is attributable to the defendant in a preexisting condition case.

However, as a caveat, we state that we prefer the following language over that proposed by the lower court. Once the plaintiff has satisfactorily met his burden (of proving that the accident aggravated his preexisting condition) and where the plaintiff's evidence shows no basis for apportionment, the defendant has the burden of going forward with evidence to establish apportionment. We do <u>not</u> hold that such an instruction is required in this kind of case. We do hold that the lower court did not abuse its discretion in granting a new trial on the basis that such an instruction should have been given.

We also briefly address the other reason given by the lower court for granting a new trial. Although expressed somewhat inexactly, the court found that it should have instructed the jury that plaintiff could recover damages if the accident aggravated his preexisting mental condition. The court did instruct that plaintiff could recover for any aggravation of his preexisting <u>physical</u> condition.

Defendant argues that plaintiff disavowed the theory of aggravation of a mental condition and, therefore, was not entitled to an instruction on that point. It is true that plaintiff's counsel gave somewhat conflicting signals on this issue. At one point, he appeared to concede that he was not pursuing the theory of aggravation of preexisting mental condition. However, at other times, specifically in his answers to interrogatories and the pre-trial order, the

plaintiff did advance this claim. For example, the plaintiff unequivocally stated in his answers to interrogatories:

> The accident which forms the basis of this action also served to aggravate plaintiff's pre-existing psychiatric condition . . . Prior to the accident, the plaintiff's mental condition had been stabilized with medication. Though the plaintiff continues to conscientiously use this and additional medication, since the time of the accident he has suffered from markedly increasing delusions of persecution, expansiveness, feelings of isolation and grandiosity, uncontrollable tremulous fits . . .

Moreover, we note that the plaintiff proposed instructions which presented this theory, albeit in a vague and roundabout way. Priest's treating psychiatrist testified that he believed the accident caused an aggravation of Priest's mental condition. We emphasize the great deference we accord to a trial court's admission of error and grant of a new trial. Thus, we find that the trial court did not abuse its discretion in granting a new trial on this point.

The second issue is whether the lower court erred in denying the Priests' motion to file an amended complaint. We note that appellant questions, rather disingenuously, whether this issue is properly before this Court.

The Priests submitted a separate brief arguing the issue of the amended complaint. Taylors correctly point out that that brief was submitted under Linda Priest's name. They argue that because Linda was not a party below, she cannot file a separate appellant's brief and the issue debated in that brief is not on appeal. We disagree. The motion to amend the complaint was made by both Maurice and Linda Priest. Moreover, both of their names appear on the notice of appeal from the denial of their motion to amend. For the

8

Taylors benefit, we repeat what we stated in our December 1986 order, "Maurice Dean Priest is . . . entitled to have considered the propriety of the order denying his motion to file an amended complaint . . . "

In denying the motion to amend, the District Court apparently reasoned that a Rule 15 motion to amend cannot be used to add a new plaintiff asserting a new claim. Rules 15(a) and (c), M.R.Civ.P., provide in relevant part:

> (a) A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires . . .
>
> . . .
>
> (c) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him . . .

In the instant case, there was a responsive pleading prior to the motion to amend the complaint. Therefore, plaintiffs needed leave of court to amend the pleadings. We have construed Rule 15 broadly and "it is the rule to allow amendments and the exception to deny them." Union Interchange, Inc. v. Parker (1960), 138 Mont. 348, 354, 357 P.2d 339, 342. In White v. Lobdell (Mont. 1984), 678 P.2d 637, 641-642, 41 St.Rep. 346, 351-352, this Court quoted with approval the United States Supreme Court's analysis of Federal Rule 15 in Foman v. Davis (1962), 371 U.S. 178, 181-182, 83 S.Ct. 227, 229-230, 9 L.Ed.2d 222, 226;

> "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded . . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. _In the_ _absence_ _of_ _any_ _apparent_ _or_ _declared_ _reason_ . . . _the_ _leave_ _sought_ _should,_ _as_ _the_ _rules_ _require,_ _be_ _'freely given.'_ _Of_ _course,_ _the_ _grant_ _or_ _denial_ _of_ _an_ _opportunity_ _to_ _amend_ _is_ _within_ _the_ _discretion_ _of_ _the_ _District_ _Court,_ _but_ _outright_ _refusal_ _to_ _grant_ _the_ _leave_ _without_ _any_ _justifying_ _reason_ _appearing_ _for_ _the_ _denial_ _is_ _not_ _an_ _exercise_ _of_ _discretion;_ _it_ _is_ _merely_ _abuse_ _of_ _that_ _discretion_ _and_ _inconsistent_ _with_ _the_ _spirit_ _of_ _the_ _Federal_ _Rules._" (Emphasis added.)

We hold that the District Court abused its discretion in rejecting the motion to amend. The court found, incorrectly, that Rule 15 could not be used to add a new plaintiff asserting a new cause of action. Numerous federal cases have established that a motion to amend may add, or substitute, a new plaintiff. Further, the new plaintiff's claim can relate back under Rule 15(c), if the Rule 15(c) requirements are

10

met, so that an otherwise time-barred claim can be litigated. See, e.g., Staggers v. Otto Gerdau Company (2nd Cir. 1966), 359 F.2d 292; Yorden v. Flaste (D.C. Del. 1974), 374 F.Supp. 516; Garr v. Clayville (D.C. Del. 1976), 71 F.R.D. 553; Leachman v. Beech Aircraft Corp. (Ct.App. D.C. 1982), 694 F.2d 1301; Stoppelman v. Owens (D.C. D.C. 1983), 580 F.Supp. 944. Certain of the federal cases (Yorden, Garr and Stoppelman among them) rely heavily upon the Advisory Committee Note of 1966 to Rule 15(c), which states in part,

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

Given the implications of the Advisory Committee Note and the liberality with which leaves to amend are to be granted, we hold that a motion to amend can properly add a plaintiff and a new cause of action. We further hold that the District Court erred in this case in refusing to allow Priests to amend their complaint.

Taylors argue that the loss of consortium claim is subject to a two year statute of limitations and that it is, therefore, time barred. We disagree. This Court has apparently never established the statute of limitations for such a claim. We now hold that a loss of consortium claim is subject to the three year statute of limitations provided in § 27-2-204, MCA, for tort actions. This Court recently agreed that

> [a] cause of action for consortium of the deprived spouse is separate and distinct from the claim of the injured spouse and that the basis for a consortium claim

11

> lies in the Montana statutes in which the
> husband and wife contract for obligations
> of mutual respect, fidelity, and support.
> Section 40-2-101, MCA.

Bain v. Gleason (Mont. 1986), 726 P.2d 1153, 1155, 43 St.Rep. 1897, 1899. Although an independent and distinct cause of action, a loss of consortium claim is also completely derivative from the other spouse's claim. Johnson v. United States (D.C. Mont. 1980), 496 F.Supp. 597. The defendant's conduct which gives rise to the husband's claim is the conduct which gives rise to the wife's claim. Maurice Priest's negligence claim is subject to the three year statute of limitations and it would be illogical and inequitable to subject the loss of consortium claim to a different time limit when both claims arise out of the same conduct. Given a three year statute of limitations, the loss of consortium claim was timely filed on August 28, 1985.

Even if that claim had been filed past the filing deadline, we hold that under Rule 15(c), M.R.Civ.P., and Tynes v. Bankers Life Co. (Mont. 1986), 730 P.2d 1115, 43 St.Rep. 2243, the loss of consortium claim would relate back to the time of the original complaint. We have already set forth above the "relation back" rule of Rule 15(c). In Tynes, Bankers Life issued a group health insurance plan for the employees of a plumbing shop owned by the Tynes family. Walter Tynes was an employee, the owner of the shop and the father of Kelley Tynes, a son who worked at the shop sporadically. In 1977, Kelley began experiencing severe mental problems. The Tynes family sought to secure coverage for Kelley's medical expenses through the group health insurance plan. After some confusion, Bankers Life denied coverage in September 1979 on the basis that Kelley was not an eligible employee. In December 1981, Kelley filed a

complaint against Bankers Life alleging breach of contract. In May 1984, an amended complaint was filed adding Walter as a plaintiff and stating three claims, i.e., breach of contract, tortious breach of the implied covenant of good faith and fair dealing and tortious violation of Montana's insurance code. Kelley also amended his own complaint at that time to allege breach of the implied covenant of good faith and fair dealing and tortious violation of the insurance code. Bankers Life claimed the new claims were barred by statutes of limitation. This Court held that the trial court did not err in allowing Walter's claims to relate back to the time of Kelley's original complaint, thus evading the bar of the statutes of limitation. This Court found that Bankers Life would not be prejudiced, stating,

> The claims of the two parties are nearly identical. They arise from the exact same "conduct, transaction, or occurrence set forth . . . in the original pleading" as required by Rule 15(c), M.R.Civ.P. The pleadings contain the same causes of action. Finally, there is a "clear identity of interest" between Kelley and Walter. Walter was the original insured. He agreed, as Kelley's father, to be responsible for Kelley's medical bills incurred at Wilson Center. The only difference in the two pleadings is damages.

Tynes, 730 P.2d at 1120-1121. Much the same can be said in the instant case. Linda's claim arises from the same occurrence set forth in her husband's original complaint, as required by Rule 15(c), M.R.Civ.P. There is a clear identity of interest between Linda and Maurice. The only additional element which Linda's claim entails is damages. Liability for the loss of consortium claim would be predicated upon liability for the original negligence claim. Taylors do not

demonstrate, and we do not find, how they could be prejudiced by allowing the loss of consortium claim to relate back.

Ample case law supports our decision today. In the oft-cited case of Williams v. United States (5th Cir. 1968), 405 F.2d 234, the minor plaintiff's mother asserted the minor's claim, as his best friend, against the United States. The mother later sought leave to amend the complaint to add herself as a plaintiff and assert her own claim for loss of her child's services. The federal district court refused to allow her claim because of the statute of limitations bar. The Fifth Circuit Court of Appeals reversed and held that the amendment would be allowed, notwithstanding the statute of limitations. The court reasoned that the government had prior notice of the mother's claim because (1) under local law, liability to the minor would give rise to liability to the parent, and (2) the circumstances would reasonably indicate a likelihood the parent would incur losses of a recoverable kind. Emphasizing the identity of interest between the mother and child, the court found that allowing the amendment would not prejudice the government. Although Williams advances a somewhat stricter standard than our Tynes case, the factual situation is similar.

An even more analogous case is Hockett v. American Airlines, Inc. (D.C. Ill. 1973), 357 F.Supp. 1343. In Hockett, the wife filed an amended complaint adding herself as a new plaintiff asserting a claim for loss of consortium. Her husband had filed the original complaint. The court found that the wife's claim was asserted within the statute of limitations. The court added, however, that even if the wife had asserted her claim after the statutory period, it would relate back under Rule 15(c) to the original complaint. The court emphasized that the loss of consortium claim was

based upon the same allegations of negligence as the husband's claim. The court added that,

> [t]he defendants cannot claim prejudice in this case since they have been fully advised of the facts upon which [the husband] has based his claim and have been vigorously preparing their defenses.

Hockett, 357 F.Supp. at 1348. The same holds true in the instant case.

Lastly, in Hoch v. Venture Enterprises, Inc. (D.C. V.I. 1979), 473 F.Supp. 541, the plaintiff's wife sought leave to amend her husband's complaint to assert a claim for loss of consortium. She sought leave to amend after the statute of limitations had run on her claim. The federal court allowed her claim to relate back to the original complaint, reasoning that the defendant would not suffer prejudice. The court found that the wife's claim was based on the same allegations of negligence as her husband's and, therefore, the defendant had received the notice that the statute of limitations was intended to afford.

These cases emphasize, and we agree, that amendments involving new plaintiffs will relate back only in very limited circumstances. Those circumstances are marked by a close identity of interest between the original plaintiff and the new plaintiff. Moreover, in this case, the claim is based on the same allegations of negligence as the original claim. We hold that Linda's claim would relate back to the original complaint if her claim had been filed after the limitation period.

The third issue is whether the lower court properly prohibited the use of the printed signs during voir dire.

> Absent an abuse of discretion, . . . the trial court has great latitude in controlling voir dire. (Citation omitted.)

15

State v. LaMere (Mont. 1980), 621 P.2d 462, 466, 37 St.Rep. 1936, 1941. Here, although the lower court prohibited the use of the signs, it stated that plaintiff's counsel could explain the concepts involved and ask the jurors if they had problems with those concepts. Thus, counsel could explore the jurors' perceptions. We hold that the court's refusal to allow the use of the signs was a reasonable limit on voir dire and not an abuse of discretion.

Affirmed in part, reversed in part and remanded for new trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

16