JUSTICE LEAPHART
delivered the Opinion of the Court.
¶1 Citizens Awareness Network, Women’s Voices for the Environment, and Clark Fork Coalition (collectively, “Conservation Groups”) appeal the order of the District Court for the Twentieth Judicial District, Sanders County, denying their motion for summary judgment and upholding the decision of the Montana Board of Environmental Review (BER) that denied the Conservation Groups’ motion for leave to amend their administrative pleading in a contested case hearing over the Montana Department of Environmental Quality’s (DEQ) issuance of an air quality permit for a coal- and wood waste-fired power plant. We reverse and remand.
¶2 The sole issue on appeal is whether the District Court erred in *62 upholding BER’s decision denying the Conservation Groups’ motion to amend their administrative pleading.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Thompson River Power LLC (TRP) owns a coal- and wood waste-fired power plant (“Thompson River facility” or “facility”) in Thompson Falls, Montana, and pursuant to the Clean Air Act of Montana seeks an air quality permit in order to begin operations. An air quality permit will allow TRP to emit air contaminants from the facility into the atmosphere, but will require TRP to take certain steps to control air pollution. See §§ 75-2-103(3), (9), -211(2) to (3), MCA.
¶4 DEQ initially issued an air quality permit to TRP’s predecessor, Thompson River Co-Gen (TRC),[1] in 2001 to construct and operate the Thompson River facility. TRP constructed the facility, installing a used stoker boiler purchased from R. J. Reynolds Corporation, and began to operate it intermittently from December 2004 to September 2005, primarily for testing purposes. DEQ modified TRP’s permit in 2004 and again in 2005. TRP applied for further modification to its permit in early 2006, and DEQ issued a draft permit. In May 2006 DEQ denied issuance of the desired modification because TRP was not capable of complying with emissions limitations in either its existing permit or the proposed modified permit. TRP subsequently submitted another application for modifications to its air quality permit, and DEQ issued a modified permit to TRP on August 21, 2006. The question before the Court involves the issuance of this last modified permit.
¶5 On September 3, 2006, the Conservation Groups challenged the modified air quality permit by requesting a contested case hearing with BER within fifteen days of DEQ’s decision to issue the permit. On September 19, 2006, the Conservation Groups filed the affidavit required by § 75-2-211(10), MCA, stating their grounds for contesting the permit. In the affidavit, the Conservation Groups alleged various errors in DEQ’s issuance of the air quality permit, including allegations that DEQ did not require TRP to comply with the best available control technology (BACT) requirements of 42 U.S.C. § 7475(a)(4) and that DEQ issued the permit without having complete information from TRP about, among other things, the heat input of the facility’s second-hand boiler. BER appointed a hearing examiner to *63 conduct prehearing activities, preside over the hearing, and issue proposed findings of fact and conclusions of law.
¶6 In response to the Conservation Group’s challenge, DEQ sent written discovery to the Conservation Groups on November 22, 2006. Later in November, DEQ filed motions to dismiss a number of the Conservation Groups’ claims for failure to state a claim and for lack of subject matter jurisdiction. The hearing examiner eventually denied DEQ’s motions to dismiss.
¶7 Three months after filing their affidavit, on December 19, 2006, the Conservation Groups sought leave from the hearing examiner to amend their affidavit to add a claim that potential emissions from the Thompson Falls facility would qualify it as a “major stationary source.” Classification of the facility as a major stationary source would subject it to additional air pollution controls under prevention of significant deterioration (PSD) regulations. The Conservation Groups argued that leave to amend was proper under Rule 15, M. R. Civ. P., because their motion was not based on an improper motive, but arose from the “same nucleus of facts that gave rise to the original Affidavit”-DEQ’s issuance of the air quality permit to TRP.
¶8 TRP and DEQ opposed the Conservation Groups’ motion, arguing that the thirty-day limit in § 75-2-211(10), MCA, for filing an affidavit in support of a challenge to the issuance of an air quality permit had passed and therefore foreclosed the possibility of subsequent amendments. TRP and DEQ further argued that the Conservation Groups had not provided good cause for their proposed amendments and that the amendments would unnecessarily and inevitably prolong the proceeding, resulting in prejudice.
¶9 The hearing examiner, declining to adopt the reasoning of either party, denied the Conservation Groups leave to amend their affidavit on the basis of Rule 15(c), M. R. Civ. P. The hearing examiner reasoned that the Conservation Groups’ prior comments in the environmental review and permitting process, their petition for a contested hearing, and their original affidavit did not give notice to DEQ or TRP that the plant should be permitted as a major stationary source. The hearing examiner concluded, somewhat puzzlingly, that the Conservation Groups’ proposed amendments did not assert a new claim, but that, nevertheless, the amendments did not relate back because they were based on different facts than those stated in the original affidavit. ¶10 Subsequently, the hearing examiner held a contested case hearing at which the parties presented evidence and argument. The hearing examiner then issued findings of fact, conclusions of law, and a *64 proposed order resolving the matter. The Conservation Groups filed objections to the findings of fact, conclusions of law, and proposed order, including an objection to the hearing examiner’s denial of their motion to amend their original affidavit. TRP and DEQ opposed the Conservation Groups’ exceptions. BER adopted the hearing examiner’s ruling in its final order without addressing, and therefore impliedly upholding, the denial of the Conservation Groups’ motion to amend. Pursuant to the Montana Administrative Procedures Act (MAPA), § 2-4-702, MCA, the Conservation Groups sought judicial review of BER’s decision denying them leave to amend their affidavit.
¶11 In the District Court, the Conservation Groups contended that BER’s decision was arbitrary, capricious, an abuse of discretion, and otherwise unlawful. DEQ and TRP intervened. The Conservation Groups moved for summary judgment, which DEQ and TRP opposed. The District Court denied summary judgment and affirmed the decision of BER. In reaching its decision, the District Court reviewed the reasoning of the hearing examiner and concluded that the hearing examiner’s decision was not arbitrary, capricious, an abuse of discretion, or otherwise unlawful.
¶12 The Conservation Groups timely appealed.
STANDARD OF REVIEW
¶13 We review a district court’s ruling on summary judgment de novo. Signal Perfection, Ltd. v. Rocky Mt. Bank - Billings, 2009 MT 365, ¶ 9, 353 Mont. 237, 224 P.3d 604. When the district court’s decision is based on review of an agency action, MAPA governs our review. See Bitterroot River Protective Assn. v. Bitterroot Conserv. Dist., 2008 MT 377, ¶ 18, 346 Mont. 507, 198 P.3d 219. Under MAPA, we will reverse an agency decision if it is based on an incorrect conclusion of law that prejudices the substantial rights of an appellant. Section 2-4-702(2)(a)(iv), MCA; Hearing Aid Inst. v. Rasmussen, 258 Mont. 367, 371-72, 852 P.3d 628 (1993); see also Bitterroot River Protective Assn., ¶ 18 (“[N]o discretion is involved when a tribunal arrives at a conclusion of law-the tribunal either correctly or incorrectly applies the law.” (quoting Steer, Inc. v. Dept. of Revenue, 245 Mont. 470, 474, 803 P.2d 601, 603 (1990))). The application of Rule 15(c), M. R. Civ. P., to undisputed facts is a purely legal question subject to de novo review. Garrett v. Fleming, 362 F.3d 692, 695 (10th *65 Cir. 2004).[2]
¶14 Justice Cotter, in dissent, objects to our chosen standard of review, raising a number of important points to which we hasten to respond. First, Justice Cotter observes that all parties to the appeal agreed that the standard of review should be abuse of discretion. However, while this is true, ultimately the appropriate standard of review is and should be determined by the Court, rather than by the parties.
¶15 Second, Justice Cotter asserts that the Court mistakenly *66 addresses the propriety of relation back under Rule 15(c), M. R. Civ. P., before addressing the propriety of amendment under Rule 15(a), M. R. Civ. P. Under the facts of this case, however, it would be illogical to address the propriety of amendment under Rule 15(a), M. R. Civ. P., before considering relation back under Rule 15(c), M. R. Civ. P. To explain why this is so, we must evaluate the steps of the hearing examiner’s argument that were not articulated, but were implicitly necessary.
¶16 Under Rule 15(a), M. R. Civ. P., a court may deny leave to amend if the proposed amended claims would, on their merits, be futile. Hobble-Diamond Cattle Co. v. Triangle Irrigation Co., 249 Mont. 322, 326, 815 P.2d 1153, 1155-56 (1991). Here, the hearing examiner’s implicit reasoning was that the Conservation Groups’ amended claims would have been time barred by the thirty-day deadline for filing an affidavit under § 75-2-211(10), MCA-and thus futile under Rule 15(a), M. R. Civ. P. — unless the claims related back under Rule 15(c), M. R. Civ. P. The hearing examiner concluded that the claims did not relate back under Rule 15(c), M. R. Civ. P., and consequently they were time barred. Therefore, the proposed amended claims would be futile, so the hearing examiner denied leave to amend, necessarily under Rule 15(a), M. R. Civ. P. Because, in this case, the question of whether to grant leave to amend (Rule 15(a), M. R. Civ. P.) turned on resolution of whether the Conservation Groups’ proposed claims would relate back (Rule 15(c), M. R. Civ. P.), Rule 15(c), M. R. Civ. P., was the threshold inquiry. See Slayton, 460 F.3d at 226 n. 11 (noting that denial of leave to amend may be based on the prior determination that an amendment would not relate back); accord Bowles v. Reade, 198 F.3d 752, 757-59 (9th Cir. 1999); F.D.I.C. v. Conner, 20 F.3d 1376, 1385 (5th Cir. 1994).
¶17 For these reasons, we respectfully disagree with Justice Cotter that analysis of the propriety of granting leave to amend under Rule 15(a), M. R. Civ. P., must always precede the relation back analysis under Rule 15(c), M. R. Civ. P.
DISCUSSION
¶18 Whether the District Court erred in upholding BER’s decision denying the Conservation Groups’ motion to amend their administrative pleading.
¶19 Section 75-2-211(10), MCA, allows a party adversely affected by DEQ’s issuance of an air quality permit to seek a contested case hearing by filing a request for a hearing within fifteen days of DEQ’s *67 decision to issue the permit and then, within thirty days of DEQ’s decision, filing an affidavit setting forth the grounds for seeking a hearing. Here, the Conservation Groups timely filed their hearing request and affidavit, but then, approximately three months after the expiration of the period for filing the affidavit, they sought leave to amend their affidavit to assert additional challenges to the air quality permit. The hearing examiner denied the Conservation Groups’ motion to amend on the basis of Rule 15(c), M. R. Civ. P., reasoning that the new claims that the Conservation Groups sought to add were based on different facts than their original claims and thus did not relate back to the filing of the initial affidavit. The Conservation Groups appeal this ruling, contending that their motion was consistent with Rule 15(c), M. R. Civ. P., because their new claims arose, like their initial claims, out of the decision of DEQ to grant a modified air quality permit to TRP.
¶20 The procedures of MAPA govern a contested case hearing under § 75-2-211(10), MCA. MAPÁ, however, does not expressly address motions to amend pleadings. Here, the hearing examiner evaluated the Conservation Groups’ motion for leave to amend under Rule 15(c), M. R. Civ. P. The Montana Rules of Civil Procedure do not apply to administrative hearings, M. R. Civ. P. 1 (“These rules govern the procedure in the district courts of the state of Montana ....”); although an agency may adopt them pursuant to statutory authority, see e.g. Pannoni v. Bd. of Trustees, 2004 MT 130, ¶ 69, 321 Mont. 311, 90 P.3d 438 (finding that Montana Rules of Civil Procedure did not apply to administrative proceeding because agency did not choose to adopt them), and the legislature may mandate their application by statute, see e.g. § 49-2-204(1), MCA (mandating the Montana Commission for Human Rights to adopt “all applicable portions of the Montana Rules of Civil Procedure”); Kloepfer v. Lumbermens Mut. Cas. Co., 272 Mont. 78, 81, 899 P.2d 1081, 1083 (1995) (“The statutes governing workers’ compensation cases do not require that the Workers’ Compensation Court comply with the rules of civil procedure applicable to district court proceedings.”). Nevertheless, where, as here, the Montana Rules of Civil Procedure do not govern an administrative proceeding, they may still serve as guidance for the agency and the parties. Moen v. Peter Kiewit & Sons Co., 201 Mont. 425, 434, 655 P.2d 482 (noting that while the Workers’ Compensation Court is not governed by the Montana Rules of Civil Procedure, it “may be guided by them” and that reference to them is acceptable); see also Yaffe Iron & Metal Co. v. U.S. Envtl. Protec. Agency, 774 F.2d 1008, 1012-14 (10th Cir. 1985) (finding *68 no error where administrative law judge, relying in part on Rule 15(b), Fed. R. Civ. P., allowed agency to amend administrative pleading after hearing). Accordingly, it was permissible here for the hearing examiner to consider Rule 15(c), M. R. Civ. P., in evaluating the Conservation Groups’ motion to amend.
¶21 Rule 15(c), M. R. Civ. P., reads in relevant part, “Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.” When the conditions of Rule 15(c), M. R. Civ. P., are met, the amendment is not barred by the statute of limitations, see e.g. Sooy, 218 Mont. at 423, 708 P.2d at 1017 (citing Barrington v. A.H. Robins Co., 702 P.2d 563, 565 (Cal. 1961)), or similar time limitations on filing claims, see e.g., Simmons, 246 Mont. at 207-09, 806 P.2d at 7-8. The basis of this rule is that once litigation concerning a particular transaction or occurrence has begun, the parties are no longer entitled to the protection of the statute of limitations from additional claims or defenses, added by amendment, that arise from the same transaction or occurrence. Prentice Lumber Co., 161 Mont. at 15, 504 P.2d at 281. This rule is rooted “in the equitable notion that dispositive decisions should be based on the merits rather than technicalities.” Woods v. Ind. U. -Purdue U. at Indianapolis, 996 F.2d 880, 884 (7th Cir. 1993).
¶22 Once a suit is filed, “the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement.” Barthel v. Stamm, 145 F.2d 487, 491 (5th Cir. 1944) (cited in Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure vol. 6A, § 1497, 93 (2d ed., West 1990)). In determining whether the claim in the amended pleading arises from the same conduct, transaction, or occurrence as the original pleading, we focus on “whether the amended and original pleading are based on the same set of operative facts.” Smith, 266 Mont. at 10, 878 P.2d at 875. “[A]n amendment which changes only the legal theory of the action ... will relate back.” Simmons, 246 Mont. at 208, 806 P.2d at 8 (quoting Rozan, 150 Mont. at 125, 431 P.2d at 872). Ultimately, the policy of Rule 15(c), M. R. Civ. P., is generous toward allowing amendments. First. Sec. Bank of Glendive v. Gary, 221 Mont. 329, 334, 718 P.2d 1345, 1348 (1986).
¶23 Here, the claims that the Conservation Groups sought to add *69 arose from the same transaction or occurrence as the claims raised in their original affidavit; that is, the decision of DEQ to issue a modified air quality permit to TRP. It is this occurrence, the final agency action in issuing the permit, that triggers administrative and later judicial review.[3] Section 75-2-211(10), MCA (providing that a person may seek a contested hearing “when the department approves ... the application for a permit”); Admin. R. M. 17.8.1210(2)(j) (“The department’s final decision regarding issuance ... of a permit is not effective until 30 days have elapsed from the date of the decision. The decision may be appealed to the board by filing a request for hearing within 30 days after the date of decision.”). Indeed, the first sentence of the Conservation Groups’ original affidavit announces: “This matter arises from the proposed issuance by the Montana Department of Environmental Quality ... of Air Quality Permit #3175-04 ... to Thompson River Co Gen [sic] Facility ... to construct and operate a power plant near Thompson Falls, Montana.” The claims that the Conservation Groups sought to raise through amendment also challenged DEQ’s issuance of the modified air quality permit. New theories based on the same transaction or occurrence relate back. Simmons, 246 Mont. at 208, 806 P.2d at 8. From the Conservation Groups’ original affidavit, DEQ knew that its decision to issue the air quality permit would be fully sifted and that the groups’ theories for challenging the permit would not be confined to those presented in the original affidavit. Barthel, 145 F.2d at 491. Thus, Rule 15(c), M. R. Civ. P., did not prevent the Conservation Groups from amending their original affidavit. BER’s contrary ruling and the District Court’s decision upholding that ruling were error. Further, because this error barred the Conservation Groups from raising potentially meritorious claims, it prejudiced their substantial rights, which is grounds for reversal under MAPA. Section 2-4-704(2)(a)(iv), MCA.
¶24 The hearing examiner, in denying the Conservation Groups leave to amend the affidavit, reasoned that neither DEQ nor TRP would have been on notice, based on the Conservation Groups’ original affidavit, that the Thompson River facility should be permitted as a major stationary source, and thus subject to PSD regulations. *70 Specifically, the hearing examiner wrote:
In the analysis of whether the proposed amendments make more specific what has already been alleged, there are no allegations in the Notice of Appeal and Request for Hearing, the original Affidavit or the comments that address factors which would cause the Department or the Permittee to consider that the permittee should be permitted as a major stationary source. It is a leap to say that the Department or the permittee should have been on notice from the comments that at the TRC plant the actual heat input to the boiler would result in the potential to emit at levels greater than 250 tons per year of NOx and S02.
This reasoning is mistaken for a number of reasons. First, the hearing examiner did not expressly consider whether the proposed amended claims arose from the same transaction or occurrence as the original claim, and to the degree that the hearing examiner implied that each discrete fact alleged in the original affidavit was a separate transaction and occurrence, the hearing examiner’s view was impermissibly narrow. Second, the hearing examiner was mistaken because the Conservation Groups’ original affidavit expressly revealed their contention, fully presented in their proposed amended affidavit, that the Thompson River facility should be subject to PSD regulations. In the original affidavit, the Conservation Groups. asserted that the issuance of the modified air quality permit was invalid because DEQ did not require TRP to comply with the best available control technology (BACT) requirements of 42 U.S.C. § 7475(a)(4). Section 7475(a)(4), which is part of the PSD provisions of the Federal Clean Air Act (FCAA), requires BACT for “major emitting facilities.” The definition of a “major emitting facility” in 42 U.S.C. § 7479(1), which is also part of the PSD program of the FCAA, is effectively identical to the definition of a “major stationary source” in Rule 17.8.801(22), Admin. R. M., which is part of Montana’s PSD regulations. Thus, from the Conservation Groups’ original affidavit, DEQ and TRP were on notice of a challenge to the permit as a “major stationary source” under PSD regulations.
¶25 Finally, DEQ argues that § 75-2-211(10), MCA, not Rule 15(c), M. R. Civ. P., governs the Conservation Groups’ motion to amend. Section 75-2-211(10), MCA, provides that a party who is adversely affected by DEQ’s decision to approve an air quality permit and who seeks a contested hearing must file an “affidavit setting forth the grounds for the request... within 30 days after the department renders its decision.” DEQ contends that the thirty-day limit for filing an *71 affidavit acts as an absolute bar against any subsequent amendment of the affidavit of an adversely affected party. DEQ’s proposed reading of § 75-2-211(10), MCA, conflicts with our reasoning in Simmons v. Mountain Bell, 246 Mont. 205, 207-09, 806 P.2d 6, 7-8 (1990). In Simmons, the plaintiff filed a claim with the Human Rights Commission (HRC) alleging employment discrimination against her employer. Id. at 206, 806 P.2d at 6. The employer subsequently fired the plaintiff, and the plaintiff later amended her complaint to include a claim for retaliatory employment termination. Id. at 206, 806 P.2d at 6-7. The plaintiff, however, failed to amend her complaint within the 180-day period for filing a complaint under § 49-2-501, MCA. Simmons, 246 Mont. at 207, 806 P.2d at 7. Consequently, the HRC dismissed the amended claim, reasoning that it was barred by the requirement that the complaint must be filed within 180 days. Id. at 207, 806 P.2d at 7. The issue on appeal was whether the amended claims, raised after the period for filing claims had expired, related back to the date of the original complaint under Rule 15(c), M. R. Civ. P. Simmons, 246 Mont. at 207, 806 P.2d at 7. This Court held that the amended claim related back under Rule 15(c), M. R. Civ. P., because it arose out of the same transaction and occurrence as the original claim. Simmons, 246 Mont. at 208-09, 806 P.2d at 8.
¶26 The instant case is analogous to Simmons. Section 75-2-211(10), MCA, like § 49-2-501(4)(a), MCA, provides a time limitation for filing an administrative pleading. Here, the Conservation Groups, like the plaintiff in Simmons, filed their pleading (affidavit) within the applicable time period, but then sought to amend the affidavit after the time period had expired. Here, as in Simmons, the claims the Conservation Groups asserted via amendment arose from the same transaction or occurrence as the claims in the original affidavit that was timely filed. Consequently, here, as in Simmons, the Conservation Groups’ amended claims relate back to the time when they filed their original affidavit. Accordingly, we reject DEQ’s argument that § 75-2-211(10), MCA, bars the Conservation Groups from amending their original affidavit.
¶27 Justice Rice, in dissent, also contends that the thirty-day deadline in § 75-2-211(10), MCA, forecloses the possibility of any subsequent amendment and, therefore, that consideration ofRule 15, M. R. Civ. P., to allow amendments outside the thirty-day period is improper as a matter of law. In support of this position, Justice Rice notes our language from In re Estate of Spencer, 2002 MT 304, ¶ 13, 313 Mont. *72 40, 59 P.3d 1160, where we stated, “Rule 81(c) [M. R. Civ. P.] does not inject the [Montana] Rules of Civil Procedure into other statutory schemes which provide different procedural requirements ....”
¶28 This reasoning, which would disallow any amendments after the initial thirty-day period for filing the initiating affidavit, goes too far. First, § 75-2-211(10), MCA, provides that hearings are to be governed by the contested case provisions of MAPA. While MAPA itself does not expressly address motions to amend, courts and commentators alike agree that amendments to administrative pleadings are proper and that leave to amend should be no more onerous in administrative cases than in civil cases. See Yaffe Iron & Metal Co., 774 F.2d at 1012-13 (“It is well settled that administrative pleadings are ‘liberally construed’ and ‘easily amended.’ In fact, as one commentator has noted, ‘The most important characteristic of pleadings in the administrative process is their unimportance. And experience shows that unimportance of pleadings is a virtue.’” (quoting K. Davis, Administrative Law Treatise vol. 1, § 8.04, 523 (1958))); Ernest Gellhorn & Ronald M. Levin, Administrative Law and Process 250 (1997) (“If anything, technical defects in pleadings are less significant in administrative practice than in civil litigation.”); Lee Modjeska, Administrative Law Practice and Procedure § 4.11, 121 (1982) (“Administrative pleadings are liberally construed and easily amended.”).
¶29 Second, we do not believe that the requirement of § 75-2-211(10), MCA, that “[a]n affidavit setting forth the grounds for the request [of a contested case hearing] ... be filed within 30 days,” is a procedural requirement that is necessarily inconsistent with subsequent amendment. See In re Est. of Spencer, ¶ 13. For example, under the Montana Rules of Civil Procedure, a defendant has a deadline for filing a responsive pleading within twenty days of service of the summons and complaint. M. R. Civ. P. 12(a). This deadline for filing a pleading, however, does not preclude subsequent amendments to the initial pleading. M. R. Civ. P. 15(a).
¶30 Third, as a practical matter, in a contested case hearing, formal discovery will only occur after an adversely affected person files a request for a hearing and the affidavit setting forth the grounds for the requested hearing. This is particularly the case with regard to discovery of information from non-state actors, such as TRP here. In fact, in this case, DEQ filed its first discovery request two months after the Conservation Groups filed their affidavit. It would make little sense and would not foster resolution of contested cases on the merits to foreclose the possibility of amendments before significant discovery *73 occurs, as Justice Rice’s proposed interpretation of § 75-2-211(10), MCA, would do.
¶31 While we agree with Justice Rice that parties should not be allowed to abuse procedural rules in order to obstruct the administrative process, we feel that the standard grounds for denying motions to amend (undue delay, bad faith, undue prejudice, repeated failure to cure deficiencies by previously allowed amendments, futility, etc.) are adequate to prevent abuse. E.g. Bitterroot Intl. Sys. Ltd. v. W. Star Trucks, Inc., 2007 MT 48, ¶ 50, 336 Mont. 145, 153 P.3d 627 (cataloguing reasons for denying leave to amend).
¶32 All parties devote argument to whether the Conservation Groups’ proposed amendments would unduly delay completion of the hearing, causing prejudice to DEQ and TRP. The hearing examiner expressly declined to address this issue in the order denying the Conservation Groups’ motion to amend. Nor did BER or the District Court address the issue of potential prejudice from any delay occasioned by the proposed amendment. In the absence of any ruling on this issue below, we decline to address this matter here. The parties may address the issue of delay on remand.
¶33 We reverse the decision of the District Court. We remand this matter to the District Court, and ultimately to BER, for further proceedings consistent with this opinion.
JUSTICES MORRIS and NELSON and DISTRICT JUDGE BROWN, sitting for CHIEF JUSTICE McGRATH, concur.

 For the sake of simplicity, we will refer to the owner and operator of the Thompson River facility as “TRP” throughout.

 Most of our opinions addressing Rule 15(c), M. R. Civ. P., do not discuss the appropriate standard of review. E.g. Brekkedahl v. McKittrick, 2002 MT 250, ¶¶ 22-27, 312 Mont. 156, 58 P.3d 175; Berlin v. Boedecker, 268 Mont. 444, 454-55, 887 P.2d 1180, 1186-87 (1994); Semenza v. Bowman, 268 Mont. 118, 122-23, 885 P.2d 451, 453-54 (1994); Higham v. City of Red Lodge, 247 Mont. 400, 403-04, 807 P.2d 195, 197-98 (1991); Simmons v. Mt. Bell, 246 Mont. 205, 207-09, 806 P.2d 6, 7-8 (1990); Walstad v. N.W. Bank of Great Falls, 240 Mont. 322, 325-26, 783 P.2d 1325, 1327 (1989); Priest v. Taylor, 227 Mont. 370, 377-81, 740 P.2d 648, 652-55 (1987); Sooy v. Petrolane Steel Gas, Inc., 218 Mont. 418, 421-25, 708 P.2d 1014, 1016-18 (1985); Rierson v. State, 188 Mont. 522, 527-28, 614 P.2d 1020, 1024 (1980); Prentice Lumber Co. v. Hukill, 161 Mont. 8, 13-16, 504 P.2d 277, 280-81 (1972); Rozan v. Rosen, 150 Mont. 121, 124-25, 431 P.2d 870, 872 (1967). Two cases have referred to the abuse of discretion standard. Fed. Mut. Ins. Co. v. Anderson, 1999 MT 288, ¶ 80, 297 Mont. 33, 991 P.2d 915; Smith v. Butte-Silver Bow Co., 266 Mont. 1, 9-11, 878 P.2d 870, 875-76 (1994). Federated Mutual did not cite any precedent or provide any rationale for applying the abuse of discretion standard of review. Fed. Mut., ¶ 80. Smith cited Priest-, however, Priest only referred to the abuse-of-discretion standard as it related to reviewing a decision under Rule 15(a), M. R. Civ. P. 227 Mont. at 378, 740 P.2d at 653. Further, the Court’s analyses of the application of Rule 15(c), M. R. Civ. P., in both Federated Mutual and Smith, independently evaluated the facts of the cases without reference to the reasoning of the district courts, suggesting the practice of de novo review, rather than deferential abuse ■of discretion review. Fed. Mut., ¶¶ 79-80; Smith, 266 Mont. at 10-11, 878 P.2d at 875-76.
We conclude that the better standard of review of a district court’s determination of whether amended claims arise out of the same transaction or occurrence as the claims in an original pleading is de novo review. The Second Circuit Court of Appeals has articulated the rationale for such review:
[A] relation back decision under Rule 15(c)(2) does not involve an exercise of discretion. A court reviewing a Rule 15(c)(2) decision performs a function analogous to that performed by an appellate court reviewing a dismissal for failure to state a claim under Rule 12(b)(6). In reviewing a 12(b)(6) dismissal, we ask whether the facts provable under the allegations of the complaint would support a valid claim for relief; in reviewing a Rule 15(c)(2) relation back decision, we ask whether the facts provable under the amended complaint arose out of conduct alleged in the original complaint. If so, the amended complaint will relate back. Because appellate courts seem to be “in as good a position as the district court” to make tins decision, the standard of review under Rule 15(c)(2) should arguably be de novo ....
Slayton v. Am. Express Co., 460 F.3d 215, 227 (2d Cir. 2006) (citation omitted). This is the majority position among federal circuit courts. Dimmock v. Lawrence & Meml. Hosp., Inc., 945 A.2d 955, 962 (Conn. 2008); see also Garrett v. Fleming, 362 F.3d 692, 695 (10th Cir. 2004); Miller v. Am. Heavy Lift Ship., 231 F.3d 242, 247 (6th Cir. 2000); Delgado-Brunet v. Clark, 93 F.3d 339, 342 (7th Cir. 1996); Percy v. S.F. Gen. Hosp., 841 F.2d 975, 978 (9th Cir. 1988); but see Mandacina v. United States, 328 F.3d 995, 1000 (8th Cir. 2003) (abuse of discretion review); Saxton v. ACF Indus., Inc., 254 F.3d 959, 962 n. 4 (11th Cir. 2001) (abuse of discretion review).

 It would be illogical to conclude, as DEQ suggests, that its earlier decision in the permitting process to evaluate the Thompson River facility asa minor stationary source was the transaction or occurrence from which the Conservation Groups’ new claims arose. Such decision would then be insulated from review by § 75-2-211(10), MCA, Rule 17.8.1210(j), Admin. R. M., and the ripeness doctrine, see e.g. Quest Corp. v. Mont. Dept. of Pub. Serv. Reg., 2007 MT 350, ¶ 22, 340 Mont. 309, 174 P.3d 496.