JUSTICE GRAY
delivered the Opinion of the Court.
In this appeal, we review orders of the Second Judicial District Court, Silver Bow County, granting summary judgment on the basis of prosecutorial immunity to Butte-Silver Bow County (the County) and the State of Montana (the State), denying leave to amend a complaint, and dismissing claims due to discovery abuse. We reverse the summary judgment in favor of the County and affirm the summary judgment in favor of the State, but on different grounds than prosecutorial immunity. We also affirm the District Court’s refusal to allow amendment of the complaint and decline to address its dismissal of claims due to discovery abuse.
In February of 1989, Richard A. Smith (Richard) was arrested, charged with the robbery of a Town Pump Food Store in Butte, Montana, and incarcerated at the Butte-Silver Bow County Jail (County Jail). The following month, he was transferred to Warm Springs State Hospital (the State Hospital) for a psychiatric evaluation to determine whether he suffered from a mental disease or defect and had the capacity to stand trial and to form the requisite mental state for the offense charged. He escaped and subsequently was apprehended and returned to the County Jail. On May 16, the State Hospital sent a report to the Silver Bow County Attorney (County Attorney), the District Court and Richard’s defense counsel indicating, among other things, that Richard was competent to stand trial.
*5 Richard was found dead in his cell at the County Jail on May 28, 1989. Although his death was caused by self-inflicted asphyxiation, it is disputed whether death was intentional or occurred accidentally during an escape attempt involving a feigned suicide.
On April 8, 1991, Billie Smith (Smith), Richard’s mother, filed a complaint containing a negligence claim on behalf of Richard’s estate and a wrongful death claim on behalf of his minor children. She alleged that agents or employees of the County, knowing from the State Hospital report that Richard was a suicide risk, negligently failed to take steps to safeguard his life. She also asserted that the individuals involved were employees or agents of the State. As the case developed, it became clear that Smith’s claims focused on the failure of the County Attorney to advise the County Jail of the allegedly lifesaving information in the report.
In August of 1992, the County and the State filed motions for partial summary judgment and summary judgment, respectively, on the basis of prosecutorial immunity. The following month, the County filed a motion to dismiss Smith’s complaint with prejudice under Rule 37(d), M.R.Civ.R, based on her failure to answer interrogatories and to supplement discovery requests. Smith opposed the motions and, in October of 1992, moved to amend her complaint to add a claim against the State based on the alleged negligence of employees at the State Hospital.
Following a hearing on the County’s motion to dismiss held on November 4, 1992, the District Court held the motion in abeyance and directed Smith to respond to discovery requests within thirty days of the date of the hearing. The court subsequently denied Smith’s motion for leave to amend the complaint and, by separate order, granted the County’s and the State’s motions for summary judgment. The court concluded that prosecutorial immunity precluded any liability on their part stemming from the County Attorney’s actions.
On December 28, 1992, the County filed a second motion for dismissal of the complaint with prejudice under subsections (b) and (d) of Rule 37, M.R.Civ.R Following a second hearing on the matter held on April 30, 1993, the District Court dismissed the complaint without prejudice under Rule 37(b), M.R.Civ.R
Did the District Court err in granting partial summary judgment and summary judgment in favor of the County and the State, respectively?
The District Court determined that the claims against the County and the State were premised on acts or omissions by the County Attorney in his prosecutorial capacity. On that basis, it concluded that *6 both were immune from liability under the doctrine of prosecutorial immunity and granted summary judgment accordingly.
Our standard for reviewing a grant of summary judgment is the same as that used by the district court. Emery v. Federated Foods (1993), 262 Mont. 83, 90-91, 863 P.2d 426, 431. In the usual case, we determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. Here, we discern no genuine issues of fact that are material to the issue of whether the County and the State are immunized from liability arising from conduct by the County Attorney. Thus, we focus solely on the court’s conclusion that the County and the State were entitled to judgment as a matter of law based on prosecutorial immunity. Our review of legal conclusions is plenary. Steer, Inc. v. Dep’t of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.
Smith argues that prosecutorial immunity does not shield the County and the State from liability because the County Attorney was acting within an administrative capacity when he failed to notify the County Jail of Richard’s purported suicidal tendency. We agree.
As quasi-judicial officers, prosecutors enjoy immunity from civil liability for conduct within the scope of their duties, allowing the unfettered enforcement of criminal laws. Ronek v. Gallatin County (1987), 227 Mont. 514, 516, 740 P.2d 1115, 1116.
“The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor’s energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.”
Ronek, 740 P.2d at 1116, quoting Imbler v. Pachtman (1976), 424 U.S. 409, 422-23, 96 S.Ct. 984, 991, 47 L.Ed.2d 128, 139. Prosecutorial immunity has been extended to counties and the state for the acts of their quasi-judicial officers. Dep’t of Justice v. District Court (1977), 172 Mont. 88, 92-93, 560 P.2d 1328, 1330; and Ronek, 740 P.2d at 1116-17.
Prosecutorial immunity, however, does not shield prosecutors from civil liability for all acts or omissions performed in the course of their employment. We consistently have stated that, “[w]hen a prosecutor acts within the scope of his duties by filing and maintaining criminal charges he is absolutely immune from civil liability, regard *7 less of negligence or lack of probable cause.” Dep’t of Justice, 560 P.2d at 1330; Ronek, 740 P.2d at 1116 (emphasis added). We observe that this approach is similar to that taken by the United States Supreme Court, In Imbler, 424 U.S. at 430-31, 96 S.Ct. at 994-96, the Supreme Court held that a prosecutor was immune from civil liability in initiating a prosecution and presenting the state’s case, conduct it deemed “intimately associated with the judicial phase of the criminal process.” Thus, we focus on whether the County Attorneys alleged wrongful conduct was prosecutorial in nature or, in other words, whether the conduct occurred in the course of filing and maintaining criminal charges.
Richard was charged with robbery upon his arrest in February of 1989. The County Attorney’s failure to notify the County Jail of Richard’s alleged suicidal tendency occurred more than two months later in May of 1989 following receipt of the State Hospital report allegedly containing that information. It is clear that the conduct of the County Attorney at issue here was not related to his decision to file, or the actual filing of, the criminal charge against Richard.
Nor did the County Attorneys failure to act relate to his decision to continue, or “maintain,” the criminal charge against Richard. The State correctly points out that the County Attorney received the psychiatric report in connection with Richard’s prosecution during the period the original charge was of record. The asserted omission by the County Attorney, however, did not relate to information provided to facilitate Richard’s prosecution, namely, whether Richard suffered from a mental disease or defect and had the capacity to stand trial and form the requisite mental state. It involved information purportedly indicating Richard’s severe depression and suicidal tendency, information extraneous to Richard’s prosecution.
By determining that prosecutorial immunity applies only to actions of county attorneys in the course of filing and maintaining criminal charges, we properly limit the protection that doctrine affords to conduct inherent in a county attorney’s prosecutorial function. The County Attorneys conduct at issue here — failure to notify the County Jail of allegedly lifesaving information — is not integral to that function. While maintaining the safety of individuals incarcerated is important to the criminal justice system, the County Attorneys decisions in that regard are part of his administrative function. We agree with the Ninth Circuit Court of Appeals that acts or omissions of a prosecutor involving conditions of post-arrest confinement are not protected by prosecutorial immunity because they *8 lack an intimate association with the prosecutorial phase of the criminal process. Gobel v. Maricopa County (9th Cir. 1989), 867 F.2d 1201, 1206.
The United States Supreme Court has applied a similar functional analysis to determine the scope of a prosecutor’s conduct which is covered by absolute immunity. Buckley v. Fitzsimmons (1993), _ U.S._, 113 S.Ct. 2606, 125 L.Ed.2d 209; Burns v. Reed (1991), 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547. Under that approach, the nature of the function performed is the determinative factor, rather than the identity of the actor who performed it. Buckley, 113 S.Ct. at 2613. Only the prosecutor’s conduct having a function closely associated with the judicial phase of the criminal process was entitled to absolute immunity. Buckley, 113 S.Ct. at 2615-18; Burns, 500 U.S. at 491-96, 111 S.Ct. at 1942-44. Indeed, the Supreme Court expressly stated that a prosecutor was not immune from liability for administrative duties. Buckley, 113 S.Ct. at 2615.
In Burns, the Supreme Court also clarified that absolute immunity addressed the concern that the judicial process might be affected by vexatious litigation. On that basis, it determined that absolute immunity was justified only for conduct “connected with the prosecutor’s role injudicial proceedings.” Burns, 500 U.S. at 494, 111 S.Ct. at 1943. Thus, the rationale underlying prosecutorial immunity does not justify shielding a prosecutor from exposure to liability for administrative decisions such as those in the case before us. While a lawsuit arising from the breach of a duty to prevent the suicide of an individual held in custody would undoubtedly divert the County Attorney’s attention, the fear of such litigation would not affect his independent judgment in filing and maintaining criminal charges.
Because the County Attorney was not acting within his prosecutorial capacity when he failed to advise the County Jail of information allegedly indicating Richard’s suicidal tendency, we hold that the District Court erred in concluding that the County and the State were entitled to prosecutorial immunity. We reverse, however, only the District Court’s grant of summary judgment in favor of the County. The State contends that it is entitled to summary judgment on other grounds and we agree.
The State argued before the District Court that it was not liable for conduct of the County Attorney because he was not an employee of the State, relying on a recent opinion issued by the Attorney General. The District Court did not address that issue, granting summary judgment solely on the basis of prosecutorial immunity. We will uphold the result reached by the district court, if *9 correct, regardless of the reasons given. Stansbury v. Lin (1993), 257 Mont. 245, 248, 848 P.2d 509, 511.
On appeal, Smith effectively concedes that the Attorney General has determined that county attorneys are not employees of the State with regard to their administrative conduct and does not refute the State’s argument. In light of our determination that the County Attorney was acting within his administrative capacity and Smith’s concession, we conclude that the State is entitled to judgment as a matter of law and affirm the court’s grant of summary judgment in its favor.
Did the District Court abuse its discretion in denying Smith’s motion to amend the complaint?
The District Court refused to allow Smith to add the following paragraph to her negligence and wrongful death claims:
Montana State Hospital, and [sic] agent or employee of Defendant State of Montana, failed to notify the Butte-Silver Bow County jail staff that Mr. Smith was a suicide risk, and failed to continue the deceased’s medication at the Butte-Silver Bow county jail. Said conduct was a direct and proximate cause of the decedent’s death.
The grant or denial of leave to amend pleadings is within the discretion of the district court and will not be reversed absent an abuse of that discretion. Priest v. Taylor (1987), 227 Mont. 370, 378, 740 P.2d 648, 653.
As its first basis for denying Smith’s motion to amend, the District Court determined that amendment would be unduly prejudicial to the State. We agree. The amendment alleges negligence based on the failure by State Hospital employees to continue Richard’s medication. Such a claim may well be one for medical malpractice; in any event, it is a totally new theory not included in the original complaint and based on acts or omissions by persons not parties to the original action. Similarly, the proposed claim against the State based on State Hospital employees’ failure to notify jail staff of Smith’s alleged suicidal tendency, while essentially the same theory as that originally asserted against the County and the State, was based on acts or omissions by persons not parties to the original action. In order to defend against these claims, the State would be required to expend a considerable amount of money and time to conduct additional discovery.
Moreover, Smith possessed the basic information needed to advance a negligence claim premised on the State Hospital’s failure to alert the County Jail of Richard’s suicidal tendency at the time she *10 filed the original complaint. She offers no explanation for her failure to plead this claim until one and one-half years later.
Rule 15(a), M.R.Civ.R, allows parties to amend pleadings by obtaining leave of the district court and requires the court to grant leave “when justice so requires.” Although the rule has been liberally interpreted, a district court is justified in refusing amendment because of undue prejudice to the opposing party, undue delay, and dilatory tactics by the moving party. Lindey’s v. Professional Consultants (1990), 244 Mont. 238, 242, 797 P.2d 920, 923. The prejudice sufficient to support a court’s denial of a motion to amend can be of precisely the kind faced by the State here — added time, energy and money in resolving the case due to additional discovery and time to determine the sufficiency of the claims alleged in the amended complaint. See Lindey’s, 797 P.2d at 923. We conclude that the District Court did not abuse its discretion in refusing to allow amendment of Smith’s complaint under Rule 15(a), M.R.Civ.R
As a second basis for denying Smith’s motion to amend, the District Court determined that the amendment did not relate back to the date of the filing of the original complaint and, as a result, that the new negligence and wrongful death claims were barred by the statutes of limitations. The amendment would relate back to the filing of the original complaint if the claims contained in the amendment arose out of the “conduct, transaction, or occurrence” set forth or attempted to be set forth in the original pleading. Rule 15(c), M.R.Civ.R We previously have focused on whether the amended and original pleading are based on the same set of operative facts to determine whether they arise from the same conduct, transaction or occurrence. Sooy v. Petrolane Steel Gas, Inc. (1985), 218 Mont. 418, 422-23, 708 P.2d 1014, 1017.
It is clear that the original complaint and proposed amendment do not share the same operative facts. First, they involve acts or omissions by different individuals. The original complaint focuses on inaction by agents or employees of the County. The proposed amendment alleges omissions by employees of the State Hospital.
Furthermore, the alleged conduct of State Hospital employees and County personnel is not the same. The proposed amendment alleges negligent failure to continue Richard’s medication following his escape from the State Hospital and reincarceration at the County Jail, an occurrence not at issue in the original complaint. In addition, while the proposed amendment and original complaint both allege a failure to notify the County Jail that Richard was suicidal, the omissions were made by different individuals and occurred on different dates. *11 State Hospital personnel learned of Richard’s purported depression and suicidal tendency during the psychiatric examination which took place between his March 30 admission and May 6 escape. Thus, their failure to notify the County Jail of Richard’s purported depression and suicidal tendency would begin on May 11, when he was recaptured. The County Attorney received the State Hospital report on March 17; any omission on his part occurred on or after that date.
We conclude that the District Court did not abuse its discretion in determining that Smith’s proposed amendment did not arise from the same “conduct, transaction, or occurrence” as the original complaint. Because the amendment did not date back to the filing of the original complaint under Rule 15(c), M.R.Civ.R, the District Court properly determined that Smith could not amend the complaint to add additional negligence and wrongful death claims because the statutes of limitations for those causes of action had expired.
We hold that the District Court did not abuse its discretion in denying Smith’s motion to amend the complaint.
Did the District Court err in dismissing Smith’s action under Rule 37, M.R.Civ.R?
As set forth above, the County moved to dismiss Smith’s claims in September of 1992, based on her alleged failure to answer interrogatories and supplement discovery requests. After a hearing held on November 4, the District Court held the motion in abeyance and ordered Smith to submit supplemental discovery responses within thirty days of the hearing. Shortly thereafter, the County moved for a psychological examination of Richard’s children. The court granted the motion and ordered the examination.
The County filed a second motion to dismiss with prejudice in December of 1992, asserting that Smith continued to abuse discovery and had obstructed the psychological examination. Following a hearing on April 30,1993, the District Court dismissed Smith’s complaint without prejudice pursuant to Rule 37(b), M.R.Civ.P. The court determined that Smith had failed to comply with its orders compelling discovery and requiring a psychological examination of Richard’s children.
The parties advance numerous and varied assertions as to the arguments and evidence presented at the November 4 and April 30 hearings. Smith asserts that the District Court improperly overlooked evidence indicating her compliance with the court’s orders regarding discovery and the examination of the children. She specifically argues that the County obtained all requested information *12 regarding tax records, medical records and expert witnesses and had, itself, abused discovery by withholding information and obtaining confidential records beyond the scope of discovery. The County disagrees in every respect.
While the hearings apparently were reported by a court reporter, transcripts of the proceedings were not provided to this Court on appeal. Nor does the record contain formal Minute Entries recording the highlights of the hearings. The Register of Action accompanying the record on appeal indicates the hearing dates but sheds little light on the substance of the hearings. Under these circumstances, we cannot reconstruct the record before the District Court to determine which party’s arguments are supported by the record.
In addition, we are unable to understand or adequately interpret the District Court’s dismissal of Smith’s action without prejudice in the context of this case. The County sought the sanction of dismissal with prejudice as authorized by Rule 37(b), M.R.Civ.R, for certain discovery-related acts or omissions. A sanction of dismissal without prejudice is, at best, an anomaly; indeed, it appears to controvert the District Court’s observations concerning Smith’s counsel’s discovery abuses and defiance of its orders.
Moreover, it appears that the District Court may have entered the dismissal without prejudice in order to facilitate Smith’s interest in obtaining this Court’s review of earlier rulings. The court noted her efforts — a premature appeal and an unsuccessful petition for writ of supervisory control — and stated that its dismissal without prejudice would facilitate our review of its previous rulings before a potentially expensive jury trial took place. We will not condone a trial court’s dismissal of an action without prejudice, in the guise of a sanction, where the intent is to obtain review of rulings otherwise not appealable under Rule 1, M.RApp.P.
Because of the state of the record before us on this issue and the court’s dismissal language, we decline to rule on the propriety of the District Court’s dismissal of Smith’s complaint pursuant to Rule 37(b), M.R.Civ.R We vacate the court’s order dismissing the complaint without precluding the availability of further proceedings on the issue on remand.
Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion.