DA 09-0070

**FILED**

January 26 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 10

CITIZENS AWARENESS NETWORK, WOMEN'S VOICES
FOR THE ENVIRONMENT, and CLARK FORK COALITION,

      Petitioners and Appellants,

  v.

MONTANA BOARD OF ENVIRONMENTAL REVIEW,

      Respondent and Appellees,

  and

MONTANA DEPARTMENT OF ENVIRONMENTAL
QUALITY and THE THOMPSON RIVER CO-GEN, LLC,

      Respondent-Intervenors and Appellees.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DV 08-107
Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

        Matthew O. Clifford, Attorney at Law; San Francisco, California

      For Appellees:

        David M. Rusoff, Attorney at Law; Helena, Montana
        (*Department of Environmental Quality*)

        Michael J. Uda, Susanne F. Bessette; Doney Crowley Bloomquist Payne
        Uda, P.C.; Helena, Montana (*Thompson River Power*)

      Submitted on Briefs:  November 12, 2009

              Decided:  January 26, 2010

Filed:

_____
           Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Citizens Awareness Network, Women's Voices for the Environment, and Clark Fork Coalition (collectively, "Conservation Groups") appeal the order of the District Court for the Twentieth Judicial District, Sanders County, denying their motion for summary judgment and upholding the decision of the Montana Board of Environmental Review (BER) that denied the Conservation Groups' motion for leave to amend their administrative pleading in a contested case hearing over the Montana Department of Environmental Quality's (DEQ) issuance of an air quality permit for a coal- and wood waste-fired power plant. We reverse and remand.

¶2     The sole issue on appeal is whether the District Court erred in upholding BER's decision denying the Conservation Groups' motion to amend their administrative pleading.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Thompson River Power LLC (TRP) owns a coal- and wood waste-fired power plant ("Thompson River facility" or "facility") in Thompson Falls, Montana, and pursuant to the Clean Air Act of Montana seeks an air quality permit in order to begin operations. An air quality permit will allow TRP to emit air contaminants from the facility into the atmosphere, but will require TRP to take certain steps to control air pollution. *See* §§ 75-2-103(3), (9), -211(2) to (3), MCA.

¶4      DEQ initially issued an air quality permit to TRP's predecessor, Thompson River Co-Gen (TRC),[1] in 2001 to construct and operate the Thompson River facility.  TRP constructed the facility, installing a used stoker boiler purchased from R.J. Reynolds Corporation, and began to operate it intermittently from December 2004 to September 2005, primarily for testing purposes.  DEQ modified TRP's permit in 2004 and again in 2005.  TRP applied for further modification to its permit in early 2006, and DEQ issued a draft permit.  In May 2006 DEQ denied issuance of the desired modification because TRP was not capable of complying with emissions limitations in either its existing permit or the proposed modified permit.  TRP subsequently submitted another application for modifications to its air quality permit, and DEQ issued a modified permit to TRP on August 21, 2006.  The question before the Court involves the issuance of this last modified permit.

¶5      On September 3, 2006, the Conservation Groups challenged the modified air quality permit by requesting a contested case hearing with BER within fifteen days of DEQ's decision to issue the permit.  On September 19, 2006, the Conservation Groups filed the affidavit required by § 75-2-211(10), MCA, stating their grounds for contesting the permit.  In the affidavit, the Conservation Groups alleged various errors in DEQ's issuance of the air quality permit, including allegations that DEQ did not require TRP to comply with the best available control technology (BACT) requirements of 42 U.S.C. § 7475(a)(4) and that DEQ issued the permit without having complete information from

---

[1] For the sake of simplicity, we will refer to the owner and operator of the Thompson River facility as "TRP" throughout.

3

TRP about, among other things, the heat input of the facility's second-hand boiler. BER appointed a hearing examiner to conduct prehearing activities, preside over the hearing, and issue proposed findings of fact and conclusions of law.

¶6 In response to the Conservation Group's challenge, DEQ sent written discovery to the Conservation Groups on November 22, 2006. Later in November, DEQ filed motions to dismiss a number of the Conservation Groups' claims for failure to state a claim and for lack of subject matter jurisdiction. The hearing examiner eventually denied DEQ's motions to dismiss.

¶7 Three months after filing their affidavit, on December 19, 2006, the Conservation Groups sought leave from the hearing examiner to amend their affidavit to add a claim that potential emissions from the Thompson Falls facility would qualify it as a "major stationary source." Classification of the facility as a major stationary source would subject it to additional air pollution controls under prevention of significant deterioration (PSD) regulations. The Conservation Groups argued that leave to amend was proper under Rule 15, M. R. Civ. P., because their motion was not based on an improper motive, but arose from the "same nucleus of facts that gave rise to the original Affidavit"— DEQ's issuance of the air quality permit to TRP.

¶8 TRP and DEQ opposed the Conservation Groups' motion, arguing that the thirty-day limit in § 75-2-211(10), MCA, for filing an affidavit in support of a challenge to the issuance of an air quality permit had passed and therefore foreclosed the possibility of subsequent amendments. TRP and DEQ further argued that the Conservation Groups had

4

not provided good cause for their proposed amendments and that the amendments would unnecessarily and inevitably prolong the proceeding, resulting in prejudice.

¶9 The hearing examiner, declining to adopt the reasoning of either party, denied the Conservation Groups leave to amend their affidavit on the basis of Rule 15(c), M. R. Civ. P. The hearing examiner reasoned that the Conservation Groups' prior comments in the environmental review and permitting process, their petition for a contested hearing, and their original affidavit did not give notice to DEQ or TRP that the plant should be permitted as a major stationary source. The hearing examiner concluded, somewhat puzzlingly, that the Conservation Groups' proposed amendments did not assert a new claim, but that, nevertheless, the amendments did not relate back because they were based on different facts than those stated in the original affidavit.

¶10 Subsequently, the hearing examiner held a contested case hearing at which the parties presented evidence and argument. The hearing examiner then issued findings of fact, conclusions of law, and a proposed order resolving the matter. The Conservation Groups filed objections to the findings of fact, conclusions of law, and proposed order, including an objection to the hearing examiner's denial of their motion to amend their original affidavit. TRP and DEQ opposed the Conservation Groups' exceptions. BER adopted the hearing examiner's ruling in its final order without addressing, and therefore impliedly upholding, the denial of the Conservation Groups' motion to amend. Pursuant to the Montana Administrative Procedures Act (MAPA), § 2-4-702, MCA, the

5

Conservation Groups sought judicial review of BER's decision denying them leave to amend their affidavit.

¶11 In the District Court, the Conservation Groups contended that BER's decision was arbitrary, capricious, an abuse of discretion, and otherwise unlawful. DEQ and TRP intervened. The Conservation Groups moved for summary judgment, which DEQ and TRP opposed. The District Court denied summary judgment and affirmed the decision of BER. In reaching its decision, the District Court reviewed the reasoning of the hearing examiner and concluded that the hearing examiner's decision was not arbitrary, capricious, an abuse of discretion, or otherwise unlawful.

¶12 The Conservation Groups timely appealed.

**STANDARD OF REVIEW**

¶13 We review a district court's ruling on summary judgment de novo. *Signal Perfection, Ltd. v. Rocky Mt. Bank – Billings*, 2009 MT 365, ¶ 9, 353 Mont. 237, ___ P.3d ___. When the district court's decision is based on review of an agency action, MAPA governs our review. *See Bitterroot River Protective Assn. v. Bitterroot Conserv. Dist.*, 2008 MT 377, ¶ 18, 346 Mont. 507, 198 P.3d 219. Under MAPA, we will reverse an agency decision if it is based on an incorrect conclusion of law that prejudices the substantial rights of an appellant. *Section* 2-4-702(2)(a)(iv), MCA; *Hearing Aid Inst. v. Rasmussen*, 258 Mont. 367, 371-72, 852 P.3d 628 (1993); *see also Bitterroot River Protective Assn.*, ¶ 18 ("[N]o discretion is involved when a tribunal arrives at a conclusion of law—the tribunal either correctly or incorrectly applies the law." (quoting

6

*Steer, Inc. v. Dept. of Revenue*, 245 Mont. 470, 474, 803 P.2d 601, 603 (1990))). The application of Rule 15(c), M. R. Civ. P., to undisputed facts is a purely legal question subject to de novo review. *Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004).[2]

---

[2] Most of our opinions addressing Rule 15(c), M. R. Civ. P., do not discuss the appropriate standard of review. *E.g. Brekkedahl v. McKittrick*, 2002 MT 250, ¶¶ 22-27, 312 Mont. 156, 58 P.3d 175; *Berlin v. Boedecker*, 268 Mont. 444, 454-55, 887 P.2d 1180, 1186-87 (1994); *Semenza v. Bowman*, 268 Mont. 118, 122-23, 885 P.2d 451, 453-54 (1994); *Higham v. City of Red Lodge*, 247 Mont. 400, 403-04, 807 P.2d 195, 197-98 (1991); *Simmons v. Mt. Bell*, 246 Mont. 205, 207-09, 806 P.2d 6, 7-8 (1990); *Walstad v. N.W. Bank of Great Falls*, 240 Mont. 322, 325-26, 783 P.2d 1325, 1327 (1989); *Priest v. Taylor*, 227 Mont. 370, 377-81, 740 P.2d 648, 652-55 (1987); *Sooy v. Petrolane Steel Gas, Inc.*, 218 Mont. 418, 421-25, 708 P.2d 1014, 1016-18 (1985); *Rierson v. State*, 188 Mont. 522, 527-28, 614 P.2d 1020, 1024 (1980); *Prentice Lumber Co. v. Hukill*, 161 Mont. 8, 13-16, 504 P.2d 277, 280-81 (1972); *Rozan v. Rosen*, 150 Mont. 121, 124-25, 431 P.2d 870, 872 (1967). Two cases have referred to the abuse of discretion standard. *Fed. Mut. Ins. Co. v. Anderson*, 1999 MT 288, ¶ 80, 297 Mont. 33, 991 P.2d 915; *Smith v. Butte-Silver Bow Co.*, 266 Mont. 1, 9-11, 878 P.2d 870, 875-76 (1994). *Federated Mutual* did not cite any precedent or provide any rationale for applying the abuse of discretion standard of review. *Fed. Mut.*, ¶ 80. *Smith* cited *Priest*; however, *Priest* only referred to the abuse-of-discretion standard as it related to reviewing a decision under Rule 15(a), M. R. Civ. P. 227 Mont. at 378, 740 P.2d at 653. Further, the Court's analyses of the application of Rule 15(c), M. R. Civ. P., in both *Federated Mutual* and *Smith*, independently evaluated the facts of the cases without reference to the reasoning of the district courts, suggesting the practice of de novo review, rather than deferential abuse of discretion review. *Fed. Mut.*, ¶¶ 79-80; *Smith*, 266 Mont. at 10-11, 878 P.2d at 875-76.

We conclude that the better standard of review of a district court's determination of whether amended claims arise out of the same transaction or occurrence as the claims in an original pleading is de novo review. The Second Circuit Court of Appeals has articulated the rationale for such review:

> [A] relation back decision under Rule 15(c)(2) does not involve an exercise of discretion. A court reviewing a Rule 15(c)(2) decision performs a function analogous to that performed by an appellate court reviewing a dismissal for failure to state a claim under Rule 12(b)(6). In reviewing a 12(b)(6) dismissal, we ask whether the facts provable under the allegations of the complaint would support a valid claim for relief; in reviewing a Rule 15(c)(2) relation back decision, we ask whether the facts provable under the amended complaint arose out of conduct alleged in the original complaint. If so, the amended complaint will relate back. Because appellate courts seem to be "in as good a position as the district court" to make this decision, the standard of review under Rule 15(c)(2) should arguably be de novo . . . .

¶14 Justice Cotter, in dissent, objects to our chosen standard of review, raising a number of important points to which we hasten to respond. First, Justice Cotter observes that all parties to the appeal agreed that the standard of review should be abuse of discretion. However, while this is true, ultimately the appropriate standard of review is and should be determined by the Court, rather than by the parties.

¶15 Second, Justice Cotter asserts that the Court mistakenly addresses the propriety of relation back under Rule 15(c), M. R. Civ. P., before addressing the propriety of amendment under Rule 15(a), M. R. Civ. P. Under the facts of this case, however, it would be illogical to address the propriety of amendment under Rule 15(a), M. R. Civ. P., before considering relation back under Rule 15(c), M. R. Civ. P. To explain why this is so, we must evaluate the steps of the hearing examiner's argument that were not articulated, but were implicitly necessary.

¶16 Under Rule 15(a), M. R. Civ. P., a court may deny leave to amend if the proposed amended claims would, on their merits, be futile. *Hobble-Diamond Cattle Co. v. Triangle Irrigation Co.*, 249 Mont. 322, 326, 815 P.2d 1153, 1155-56 (1991). Here, the hearing examiner's implicit reasoning was that the Conservation Groups' amended claims would have been time barred by the thirty-day deadline for filing an affidavit under § 75-2-211(10), MCA—and thus futile under Rule 15(a), M. R. Civ. P.—unless the

*Slayton v. Am. Express Co.*, 460 F.3d 215, 227 (2d Cir. 2006) (citation omitted). This is the majority position among federal circuit courts. *Dimmock v. Lawrence & Meml. Hosp., Inc.*, 945 A.2d 955, 962 (Conn. 2008); *see also Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004); *Miller v. Am. Heavy Lift Ship.*, 231 F.3d 242, 247 (6th Cir. 2000); *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996); *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988); *but see Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir. 2003) (abuse of discretion review); *Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 962 n. 4 (11th Cir. 2001) (abuse of discretion review).

claims related back under Rule 15(c), M. R. Civ. P. The hearing examiner concluded that the claims did not relate back under Rule 15(c), M. R. Civ. P., and consequently they were time barred. Therefore, the proposed amended claims would be futile, so the hearing examiner denied leave to amend, necessarily under Rule 15(a), M. R. Civ. P. Because, in this case, the question of whether to grant leave to amend (Rule 15(a), M. R. Civ. P.) turned on resolution of whether the Conservation Groups' proposed claims would relate back (Rule 15(c), M. R. Civ. P.), Rule 15(c), M. R. Civ. P., was the threshold inquiry. *See Slayton*, 460 F.3d at 226 n. 11 (noting that denial of leave to amend may be based on the prior determination that an amendment would not relate back); *accord Bowles v. Reade*, 198 F.3d 752, 757-59 (9th Cir. 1999); *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994).

¶17 For these reasons, we respectfully disagree with Justice Cotter that analysis of the propriety of granting leave to amend under Rule 15(a), M. R. Civ. P., must always precede the relation back analysis under Rule 15(c), M. R. Civ. P.

## DISCUSSION

¶18 *Whether the District Court erred in upholding BER's decision denying the Conservation Groups' motion to amend their administrative pleading.*

¶19 Section 75-2-211(10), MCA, allows a party adversely affected by DEQ's issuance of an air quality permit to seek a contested case hearing by filing a request for a hearing within fifteen days of DEQ's decision to issue the permit and then, within thirty days of DEQ's decision, filing an affidavit setting forth the grounds for seeking a hearing. Here,

9

the Conservation Groups timely filed their hearing request and affidavit, but then, approximately three months after the expiration of the period for filing the affidavit, they sought leave to amend their affidavit to assert additional challenges to the air quality permit. The hearing examiner denied the Conservation Groups' motion to amend on the basis of Rule 15(c), M. R. Civ. P., reasoning that the new claims that the Conservation Groups sought to add were based on different facts than their original claims and thus did not relate back to the filing of the initial affidavit. The Conservation Groups appeal this ruling, contending that their motion was consistent with Rule 15(c), M. R. Civ. P., because their new claims arose, like their initial claims, out of the decision of DEQ to grant a modified air quality permit to TRP.

¶20 The procedures of MAPA govern a contested case hearing under § 75-2-211(10), MCA. MAPA, however, does not expressly address motions to amend pleadings. Here, the hearing examiner evaluated the Conservation Groups' motion for leave to amend under Rule 15(c), M. R. Civ. P. The Montana Rules of Civil Procedure do not apply to administrative hearings, M. R. Civ. P. 1 ("These rules govern the procedure in the district courts of the state of Montana . . . ."); although an agency may adopt them pursuant to statutory authority, *see e.g. Pannoni v. Bd. of Trustees*, 2004 MT 130, ¶ 69, 321 Mont. 311, 90 P.3d 438 (finding that Montana Rules of Civil Procedure did not apply to administrative proceeding because agency did not choose to adopt them), and the legislature may mandate their application by statute, *see e.g.* § 49-2-204(1), MCA (mandating the Montana Commission for Human Rights to adopt "all applicable portions

10

of the Montana Rules of Civil Procedure"); *Kloepfer v. Lumbermens Mut. Cas. Co.*, 272 Mont. 78, 81, 899 P.2d 1081, 1083 (1995) ("The statutes governing workers' compensation cases do not require that the Workers' Compensation Court comply with the rules of civil procedure applicable to district court proceedings."). Nevertheless, where, as here, the Montana Rules of Civil Procedure do not govern an administrative proceeding, they may still serve as guidance for the agency and the parties. *Moen v. Peter Kiewit & Sons Co.*, 201 Mont. 425, 434, 655 P.2d 482 (noting that while the Workers' Compensation Court is not governed by the Montana Rules of Civil Procedure, it "may be guided by them" and that reference to them is acceptable); *see also Yaffe Iron & Metal Co. v. U.S. Envtl. Protec. Agency*, 774 F.2d 1008, 1012-14 (10th Cir. 1985) (finding no error where administrative law judge, relying in part on Rule 15(b), Fed. R. Civ. P., allowed agency to amend administrative pleading after hearing). Accordingly, it was permissible here for the hearing examiner to consider Rule 15(c), M. R. Civ. P., in evaluating the Conservation Groups' motion to amend.

¶21 Rule 15(c), M. R. Civ. P., reads in relevant part, "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." When the conditions of Rule 15(c), M. R. Civ. P., are met, the amendment is not barred by the statute of limitations, *see e.g. Sooy*, 218 Mont. at 423, 708 P.2d at 1017 (citing *Barrington v. A.H. Robins Co.*, 702 P.2d 563, 565 (Cal. 1961)), or similar time limitations on filing claims, *see e.g., Simmons*, 246 Mont. at

11

207-09, 806 P.2d at 7-8. The basis of this rule is that once litigation concerning a particular transaction or occurrence has begun, the parties are no longer entitled to the protection of the statute of limitations from additional claims or defenses, added by amendment, that arise from the same transaction or occurrence. *Prentice Lumber Co.*, 161 Mont. at 15, 504 P.2d at 281. This rule is rooted "in the equitable notion that dispositive decisions should be based on the merits rather than technicalities." *Woods v. Ind. U.-Perdue U. at Indianapolis*, 996 F.2d 880, 884 (7th Cir. 1993).

¶22 Once a suit is filed, "the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement." *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir. 1944) (cited in Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* vol. 6A, § 1497, 93 (2d ed., West 1990)). In determining whether the claim in the amended pleading arises from the same conduct, transaction, or occurrence as the original pleading, we focus on "whether the amended and original pleading are based on the same set of operative facts." *Smith*, 266 Mont. at 10, 878 P.2d at 875. "[A]n amendment which changes only the legal theory of the action . . . will relate back." *Simmons*, 246 Mont. at 208, 806 P.2d at 8 (quoting *Rozan*, 150 Mont. at 125, 431 P.2d at 872). Ultimately, the policy of Rule 15(c), M. R. Civ. P., is generous toward allowing amendments. *First. Sec. Bank of Glendive v. Gary*, 221 Mont. 329, 334, 718 P.2d 1345, 1348 (1986).

12

¶23 Here, the claims that the Conservation Groups sought to add arose from the same transaction or occurrence as the claims raised in their original affidavit; that is, the decision of DEQ to issue a modified air quality permit to TRP. It is this occurrence, the final agency action in issuing the permit, that triggers administrative and later judicial review.[3] Section 75-2-211(10), MCA (providing that a person may seek a contested hearing "when the department approves . . . the application for a permit"); Admin. R. M. 17.8.1210(2)(j) ("The department's final decision regarding issuance . . . of a permit is not effective until 30 days have elapsed from the date of the decision. The decision may be appealed to the board by filing a request for hearing within 30 days after the date of decision."). Indeed, the first sentence of the Conservation Groups' original affidavit announces: "This matter arises from the proposed issuance by the Montana Department of Environmental Quality . . . of Air Quality Permit #3175-04 . . . to Thompson River Co Gen [sic] Facility . . . to construct and operate a power plant near Thompson Falls, Montana." The claims that the Conservation Groups sought to raise through amendment also challenged DEQ's issuance of the modified air quality permit. New theories based on the same transaction or occurrence relate back. *Simmons*, 246 Mont. at 208, 806 P.2d at 8. From the Conservation Groups' original affidavit, DEQ knew that its decision to issue the air quality permit would be fully sifted and that the groups' theories for

---

[3] It would be illogical to conclude, as DEQ suggests, that its earlier decision in the permitting process to evaluate the Thompson River facility as a minor stationary source was the transaction or occurrence from which the Conservation Groups' new claims arose. Such decision would then be insulated from review by § 75-2-211(10), MCA, Rule 17.8.1210(j), Admin. R. M., and the ripeness doctrine, *see e.g. Quest Corp. v. Mont. Dept. of Pub. Serv. Reg.*, 2007 MT 350, ¶ 22, 340 Mont. 309, 174 P.3d 496.

13

challenging the permit would not be confined to those presented in the original affidavit. *Barthel*, 145 F.2d at 491. Thus, Rule 15(c), M. R. Civ. P., did not prevent the Conservation Groups from amending their original affidavit. BER's contrary ruling and the District Court's decision upholding that ruling were error. Further, because this error barred the Conservation Groups from raising potentially meritorious claims, it prejudiced their substantial rights, which is grounds for reversal under MAPA. Section 2-4-704(2)(a)(iv), MCA.

¶24 The hearing examiner, in denying the Conservation Groups leave to amend the affidavit, reasoned that neither DEQ nor TRP would have been on notice, based on the Conservation Groups' original affidavit, that the Thompson River facility should be permitted as a major stationary source, and thus subject to PSD regulations. Specifically, the hearing examiner wrote:

> In the analysis of whether the proposed amendments make more specific what has already been alleged, there are no allegations in the Notice of Appeal and Request for Hearing, the original Affidavit or the comments that address factors which would cause the Department or the Permittee to consider that the permittee should be permitted as a major stationary source. It is a leap to say that the Department or the permittee should have been on notice from the comments that at the TRC plant the actual heat input to the boiler would result in the potential to emit at levels greater than 250 tons per year of $NO_x$ and $SO_2$.

This reasoning is mistaken for a number of reasons. First, the hearing examiner did not expressly consider whether the proposed amended claims arose from the same transaction or occurrence as the original claim, and to the degree that the hearing examiner implied that each discrete fact alleged in the original affidavit was a separate transaction and

14

occurrence, the hearing examiner's view was impermissibly narrow. Second, the hearing examiner was mistaken because the Conservation Groups' original affidavit expressly revealed their contention, fully presented in their proposed amended affidavit, that the Thompson River facility should be subject to PSD regulations. In the original affidavit, the Conservation Groups asserted that the issuance of the modified air quality permit was invalid because DEQ did not require TRP to comply with the best available control technology (BACT) requirements of 42 U.S.C. § 7475(a)(4). Section 7475(a)(4), which is part of the PSD provisions of the Federal Clean Air Act (FCAA), requires BACT for "major emitting facilities." The definition of a "major emitting facility" in 42 U.S.C. § 7479(1), which is also part of the PSD program of the FCAA, is effectively identical to the definition of a "major stationary source" in Rule 17.8.801(22), Admin. R. M., which is part of Montana's PSD regulations. Thus, from the Conservation Groups' original affidavit, DEQ and TRP were on notice of a challenge to the permit as a "major stationary source" under PSD regulations.

¶25    Finally, DEQ argues that § 75-2-211(10), MCA, not Rule 15(c), M. R. Civ. P., governs the Conservation Groups' motion to amend. Section 75-2-211(10), MCA, provides that a party who is adversely affected by DEQ's decision to approve an air quality permit and who seeks a contested hearing must file an "affidavit setting forth the grounds for the request . . . within 30 days after the department renders its decision." DEQ contends that the thirty-day limit for filing an affidavit acts as an absolute bar against any subsequent amendment of the affidavit of an adversely affected party. DEQ's

15

proposed reading of § 75-2-211(10), MCA, conflicts with our reasoning in *Simmons v. Mountain Bell*, 246 Mont. 205, 207-09, 806 P.2d 6, 7-8 (1990). In *Simmons*, the plaintiff filed a claim with the Human Rights Commission (HRC) alleging employment discrimination against her employer. *Id.* at 206, 806 P.2d at 6. The employer subsequently fired the plaintiff, and the plaintiff later amended her complaint to include a claim for retaliatory employment termination. *Id.* at 206, 806 P.2d at 6-7. The plaintiff, however, failed to amend her complaint within the 180-day period for filing a complaint under § 49-2-501, MCA. *Simmons*, 246 Mont. at 207, 806 P.2d at 7. Consequently, the HRC dismissed the amended claim, reasoning that it was barred by the requirement that the complaint must be filed within 180 days. *Id.* at 207, 806 P.2d at 7. The issue on appeal was whether the amended claims, raised after the period for filing claims had expired, related back to the date of the original complaint under Rule 15(c), M. R. Civ. P. *Simmons*, 246 Mont. at 207, 806 P.2d at 7. This Court held that the amended claim related back under Rule 15(c), M. R. Civ. P., because it arose out of the same transaction and occurrence as the original claim. *Simmons*, 246 Mont. at 208-09, 806 P.2d at 8.

¶26 The instant case is analogous to *Simmons*. Section 75-2-211(10), MCA, like § 49-2-501(4)(a), MCA, provides a time limitation for filing an administrative pleading. Here, the Conservation Groups, like the plaintiff in *Simmons*, filed their pleading (affidavit) within the applicable time period, but then sought to amend the affidavit after the time period had expired. Here, as in *Simmons*, the claims the Conservation Groups asserted via amendment arose from the same transaction or occurrence as the claims in the

16

original affidavit that was timely filed. Consequently, here, as in *Simmons*, the Conservation Groups' amended claims relate back to the time when they filed their original affidavit. Accordingly, we reject DEQ's argument that § 75-2-211(10), MCA, bars the Conservation Groups from amending their original affidavit.

¶27 Justice Rice, in dissent, also contends that the thirty-day deadline in § 75-2-211(10), MCA, forecloses the possibility of any subsequent amendment and, therefore, that consideration of Rule 15, M. R. Civ. P., to allow amendments outside the thirty-day period is improper as a matter of law. In support of this position, Justice Rice notes our language from *In re Estate of Spencer*, 2002 MT 304, ¶ 13, 313 Mont. 40, 59 P.3d 1160, where we stated, "Rule 81(c) [M. R. Civ. P.] does not inject the [Montana] Rules of Civil Procedure into other statutory schemes which provide different procedural requirements . . . ."

¶28 This reasoning, which would disallow any amendments after the initial thirty-day period for filing the initiating affidavit, goes too far. First, § 75-2-211(10), MCA, provides that hearings are to be governed by the contested case provisions of MAPA. While MAPA itself does not expressly address motions to amend, courts and commentators alike agree that amendments to administrative pleadings are proper and that leave to amend should be no more onerous in administrative cases than in civil cases. *See Yaffe Iron & Metal Co.*, 774 F.2d at 1012-13 ("It is well settled that administrative pleadings are 'liberally construed' and 'easily amended.' In fact, as one commentator has noted, 'The most important characteristic of pleadings in the administrative process is

their unimportance.  And experience shows that unimportance of pleadings is a virtue.'" (quoting K. Davis, *Administrative Law Treatise* vol. 1, § 8.04, 523 (1958))); Ernest Gellhorn & Ronald M. Levin, *Administrative Law and Process* 250 (1997) ("If anything, technical defects in pleadings are less significant in administrative practice than in civil litigation."); Lee Modjeska, *Administrative Law Practice and Procedure* § 4.11, 121 (1982) ("Administrative pleadings are liberally construed and easily amended.").

¶29   Second, we do not believe that the requirement of § 75-2-211(10), MCA, that "[a]n affidavit setting forth the grounds for the request [of a contested case hearing] . . . be filed within 30 days," is a procedural requirement that is necessarily inconsistent with subsequent amendment.  *See In re Est. of Spencer,* ¶ 13.  For example, under the Montana Rules of Civil Procedure, a defendant has a deadline for filing a responsive pleading within twenty days of service of the summons and complaint.  M. R. Civ. P. 12(a).  This deadline for filing a pleading, however, does not preclude subsequent amendments to the initial pleading.  M. R. Civ. P. 15(a).

¶30   Third, as a practical matter, in a contested case hearing, formal discovery will only occur after an adversely affected person files a request for a hearing and the affidavit setting forth the grounds for the requested hearing.  This is particularly the case with regard to discovery of information from non-state actors, such as TRP here.  In fact, in this case, DEQ filed its first discovery request two months after the Conservation Groups filed their affidavit.  It would make little sense and would not foster resolution of contested cases on the merits to foreclose the possibility of amendments before

18

significant discovery occurs, as Justice Rice's proposed interpretation of § 75-2-211(10), MCA, would do.

¶31    While we agree with Justice Rice that parties should not be allowed to abuse procedural rules in order to obstruct the administrative process, we feel that the standard grounds for denying motions to amend (undue delay, bad faith, undue prejudice, repeated failure to cure deficiencies by previously allowed amendments, futility, etc.) are adequate to prevent abuse. *E.g. Bitterroot Intl. Sys. Ltd. v. W. Star Trucks, Inc.*, 2007 MT 48, ¶ 50, 336 Mont. 145, 153 P.3d 627 (cataloguing reasons for denying leave to amend).

¶32    All parties devote argument to whether the Conservation Groups' proposed amendments would unduly delay completion of the hearing, causing prejudice to DEQ and TRP. The hearing examiner expressly declined to address this issue in the order denying the Conservation Groups' motion to amend. Nor did BER or the District Court address the issue of potential prejudice from any delay occasioned by the proposed amendment. In the absence of any ruling on this issue below, we decline to address this matter here. The parties may address the issue of delay on remand.

¶33    We reverse the decision of the District Court. We remand this matter to the District Court, and ultimately to BER, for further proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

19

We concur:

/S/ BRIAN MORRIS
/S/ JAMES C. NELSON

/S/ JOHN C. BROWN
District Court Judge John C. Brown,
sitting in for Chief Justice Mike McGrath

Justice Patricia O. Cotter dissents.

¶34   I dissent from the Court's decision to reverse the order denying the Conservation Groups' motion for leave to amend their affidavit.  In this connection, I dissent from the Court's sua sponte decision to modify the standard of review applicable to orders entered pursuant to M. R. Civ. P. 15(c).  I would continue to adhere to our precedent that orders granting or denying leave to amend pleadings should be reviewed for an abuse of discretion.

¶35   The Conservation Groups presented their appeal in these words:  "The sole issue on this appeal is whether the BER abused its discretion by denying leave to amend on the grounds that the Conservation Groups' proposed 'major source' claim did not arise out of the same 'conduct, transaction, or occurrence' as the original  Affidavit."   The Conservation Groups stated that a decision to deny leave to amend pursuant to M. R. Civ. P. 15(c) is reviewed for abuse of discretion, citing *Priest v. Taylor*, 227 Mont. 370, 740 P.2d 653 (1987).

¶36 In its response brief, DEQ cited our recent decision in *Farmers Coop. Assn. v. Amsden, LLC*, 2007 MT 286, ¶ 12, 339 Mont. 445, 171 P.3d 690, for the proposition that, under Rule 15, we review a decision denying leave to amend under the abuse of discretion standard. In its brief, Intervenor TRP similarly argued that the grant or denial of a motion to amend pleadings under Rule 15 is within the discretion of the reviewing court, and is reversible only for an abuse of discretion. Thus, all three parties to this case agree that our review of the hearing examiner's decision to deny the motion for leave to amend the affidavit should be for an abuse of discretion. Notwithstanding this rare uniformity of agreement among all parties, the Court has seen fit to sua sponte select a different and new standard of review with respect to motions to amend pleadings, which decision in turn drives the decision to reverse.

¶37 At ¶ 13, footnote 2 of the Opinion, the Court engages in a somewhat lengthy analysis of what should be the standard of review under Rule 15(c), noting that few of our opinions discuss the appropriate standard of review with respect to this subpart of the Rule. This is where the Court goes off the tracks. The Court errs in conducting the Rule 15(c) analysis without first addressing, under Rule 15(a), the propriety of the hearing examiner's decision to deny the amendment in the first instance. This approach ignores the threshold inquiry which invokes the hearing examiner's discretion.

¶38 Rule 15(a) addresses the circumstances under which a party may amend its pleadings. Once a requisite amount of time has passed, the rule provides that a party's pleading may be amended only by "leave of court or by written consent of the adverse

21

party," and that "leave shall be freely given when justice so requires." The remaining subsections of the rule address "amendments to conform to the evidence," "relation back of amendments," and "supplemental pleadings." Of particular interest here is Rule 15(c), which provides generally that whenever a claim or defense asserted in an amended pleading arises out of the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." This subsection of the rule requires a relation-back inquiry under those circumstances in which the amended pleading would otherwise be too late in time; it does not, however, displace the general rule set forth in Rule 15(a) that leave of court must be obtained for amendment of a pleading in the first instance. It is the "leave of court" which calls for an exercise of the district court's discretion, or in this case the discretion of the hearing examiner. If the court grants leave to amend, then, in cases calling for the determination, the *next* inquiry is whether the amendment already allowed relates back to the date of the original pleading.

¶39    I now turn to the precedent which the Court's decision seemingly overrules. In *Lindey's v. Professional Consultants, Inc.,* 244 Mont. 238, 797 P.2d 920 (1990), cited by TRP, the plaintiff sought leave to amend its complaint after the scheduling order deadline had expired. The district court denied the motion, and on appeal, we affirmed. Citing multiple cases, we said that the decision to grant or deny a motion to amend lies within the discretion of the trial court. *Lindey's*, 244 Mont. at 242, 797 P.2d at 923. We further said that while the rule favors amendments, a trial court would be justified in denying a

22

motion for such reasons as undue delay, bad faith, or a dilatory motive on the part of the movant, to name a few. We further said that a party seeking to overturn a district court's decision denying leave to amend must demonstrate an abuse of discretion. *Lindey's*, 244 Mont. at 242, 797 P.2d at 923.

¶40 Later in the same year, we decided the case of *Simmons v. Mountain Bell*, 246 Mont. 205, 806 P.2d 6 (1990). In that case, the plaintiff filed an amended complaint with the Montana Human Rights Commission (HRC) after the expiration of the statute of limitations, asserting an additional claim. The HRC denied leave to amend. On appeal, the district court held that Rule 15(c) applied, and that the filing of the amended complaint related back to the time of the filing of the action. On appeal, we affirmed. We agreed with the district court's conclusion that the HRC had "abused its discretion" when it concluded that barring the amendment did not disadvantage the plaintiff. *Simmons*, 246 Mont. at 208, 806 P.2d at 7-8.

¶41 Most recently, we addressed a plaintiff's appeal from a district court's decision denying leave to amend its complaint to add an additional claim. In *Farmers*, we again announced the general rule that the decision to grant or deny a motion to amend lies within the discretion of the district court, and that we review such decisions to determine whether the court abused its discretion. *Farmers*, ¶ 12. In addition, we again cited the multiple justifications a court might have for denying such a motion. We then addressed the specific claims presented by the plaintiff in its original complaint, the prejudice to the opposing party who operated for a year under the presumption that the original

23

allegations were discrete, and the failure of the plaintiff to provide a sufficient reason for the late amendment. We concluded that several concerns expressed by the district court supported its decision to deny leave to amend the complaint. *Farmers*, ¶ 22.

¶42     Here, in similar fashion, the hearing examiner evaluated the status of the case as of the time that leave to amend was sought. The examiner concluded that the proposed amendment would change the way the application would be processed, that DEQ did not have prior notice of the proposed revision, and further that the Conservation Groups did not aver that the amended affidavit was based upon newly acquired information that was not available at the time of the initial filing. In other words, the hearing examiner cited the multiple reasons the amendment should, in her discretion, be denied. Upon its review, the District Court concluded that it was evident from the hearing examiner's order that issues such as delay and prejudice were also considered by her in arriving at her decision. The District Court concluded that the decision by the hearing examiner was not arbitrary or capricious, and that there was no abuse of discretion.

¶43     Thus, contrary to the Court's assertion that futility was the basis for the hearing examiner's "implicit reasoning," I would find, as did the District Court, that the hearing examiner properly took account of several factors in rejecting leave to amend. Our well-reasoned precedent is clear: A court or hearing examiner is privileged to take account of multiple aspects of the case in deciding whether to exercise discretion in favor of or against an amendment. We err here, in my judgment, in jumping past this inquiry to an analysis of whether the facts provable under the amended complaint arose out of the

24

conduct alleged in the original complaint, and in announcing a new standard of review applicable to this analysis. We should first look to whether the denial of the motion for leave to amend was an abuse of the hearing examiner's or the court's discretion, given the many factors taken into account by them in the first instance. It is this analysis which the hearing examiner conducted and which the District Court upheld. It is this analysis which invokes the hearing examiner's discretion, exercised based upon her knowledge of the status of the case and the possible problems attendant to a proposed amendment.

¶44 In sum, I dissent from our revision of the standard of review of Rule 15 decisions, and consequently from the Court's determination to reverse the decision of the District Court. Had the hearing examiner and the District Court determined the amendment should have been allowed, I would have affirmed this exercise of discretion; similarly, I would conclude that denial of the amendment was likewise within the discretion of the hearing examiner under the facts presented here.

¶45 I therefore dissent.

/S/ PATRICIA O. COTTER

Justice Jim Rice, dissenting.

¶46 I agree with Justice Cotter's thoughts with regard to the correct standard of review of abuse of discretion. I write separately because, in my view, the request for leave to

amend in this case was improper as a matter of law and, thus, *granting* the request would have constituted an abuse of discretion.

¶47   The governing statute provides that "[a]n affidavit setting forth the grounds for the request must be filed within 30 days . . . ." Section 75-2-211(10), MCA (2005). The "grounds" set forth in the Conservation Groups' affidavit pertained only to alleged errors within DEQ's review of the permit for minor stationary emission sources. The affidavit did not assert that an entirely different permit process should be applied. Thus, because the Conservation Groups failed to set forth this new and different ground within 30 days as required by the statute, they were barred from amending their affidavit to include it. *See* § 75-2-211(10), MCA.

¶48   Rule 15(c), M. R. Civ. P., fails to save the day because the Legislature has not applied the Rules of Civil Procedure to this particular process, as it has done for other statutory procedures. *See e.g.* § 49-2-204(2), MCA ("[T]he department shall adopt all applicable portions of the Montana Rules of Civil Procedure . . . ."). Thus, the Rules of Civil Procedure, as the Court recognizes, can at most provide "guidance." Opinion, ¶ 20. What the Court fails to acknowledge, however, is that such guidance is only appropriate when the statute at issue does not specifically provide a different procedure. *See In re Estate of Spencer*, 2002 MT 304, ¶¶ 12-13, 313 Mont. 40, 59 P.3d 1160 (The Rules of Civil Procedure are not to be interjected "into other statutory schemes which provide different procedural requirements."). Here, § 75-2-211(10), MCA, specifically controls the issue, directing "[a]n affidavit *setting forth the grounds* for the request *must be* filed

26

within 30 days." (Emphasis added.) Because the Conservation Groups failed to set forth their new claim within 30 days, § 75-2-211(10), MCA, requires denial of the amendment as a matter of law.

¶49 The Court rejects this position, insisting that it "conflicts with our reasoning in *Simmons v. Mountain Bell*, 246 Mont. 205, 207-09, 806 P.2d 6, 7-8 (1990)" and that this case is "analogous." Opinion, ¶¶ 25-26. I disagree. The Court's reliance on *Simmons* is misplaced because § 49-2-501, MCA, the statute at issue in *Simmons*, is critically different than the statute before the Court here. Section 49-2-501, MCA, provided that "a complaint under this chapter must be filed with the commission within 180 days after the alleged unlawful discriminatory practice occurred or was discovered." The statute thus provided a time deadline only for the filing of a document (i.e. a "complaint"), but provided no deadline or requirement governing the *content* of the document, as the statute does here. Absent statutory direction, it was entirely appropriate for the *Simmons* Court to consult Rule 15(c) to determine whether a complainant may add *new content* which would relate back. However, unlike the statute in *Simmons*, § 75-2-211(10), MCA, provides a deadline for both the document *and* restricts the content within that document. ("[T]he *grounds* for the request must be filed within 30 days . . . ." Section 75-2-211(10), MCA (emphasis added).) Allowing an amendment which adds *new claims* after the 30-day deadline, even from the same transaction or occurrence, contravenes this clear requirement and defeats the Legislature's intent to require the grounds for a claim to be filed within the stated period.

27

¶50 Adhering to the statute at issue here and prohibiting amendments raising *new claims* after the 30-day deadline would not, as the Court states, forbid all amendments. *See* Opinion, ¶ 28. Of course, prior to expiration of the 30-day deadline, any kind of amendment to the affidavit is permitted, even one setting forth entirely new grounds. *See* § 75-2-211(10), MCA. After the 30-day deadline, amendments which clarify or support claims timely filed would also be permissible. *See* § 75-2-211(10), MCA.

¶51 The Court also cites to Rule 12(a), M. R. Civ. P., to support its position, reasoning from this Rule that the deadline for an answer "does not preclude subsequent amendments" to an answer filed in District Court and neither should § 75-2-211(10), MCA. Opinion, ¶ 29. Even though, for the reasons discussed above, the Rules of Civil Procedure do not govern here, Rule 12(a) illustrates precisely why this Dissent is correct. Rule 12(a) provides that "[a] defendant shall serve an answer within 20 days after the service of the summons and complaint upon that defendant" and thus, like the statute at issue in *Simmons*, provides only for a filing deadline, and not a requirement as to content or amendment of content. Content is governed instead by Rule 15. Section 75-2-211(10), MCA, clearly operates differently than the Rules of Civil Procedure.

¶52 The Court has reached its decision by looking to other rules, treatises discussing administrative law generally, and cases interpreting different statutes—everything but the wording of the actual statute at issue. The Court thus fails to enforce the specific requirements within the statute and the Legislature's desire to conduct a prompt

proceeding. By such maneuvering, the Court has failed to heed the admonishment provided by the United States Supreme Court in cases such as this:

> Indeed, administrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that "ought to be" considered and then, after failing to do more to bring the matter to the agency's attention, seeking to have that agency determination vacated on the ground that the agency failed to consider matters "forcibly presented."

*Vermont Yankee Nuclear Power Corp. v. Nat. Resources Def. Council, Inc.*, 435 U.S. 519, 553-54, 98 S. Ct. 1197, 1217 (1978). Allowing an untimely amendment which raises a new issue not only violates the letter and spirit of the governing statute, but also incubates the kind of "unjustified obstructionism" about which the High Court warned.

¶53 I would affirm the District Court.

/S/ JIM RICE