DA 11-0201

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 10

HOBBLE DIAMOND RANCH, LLC,
ROBERT L. and SUSAN BURCH,
husband and wife, and JAMES W. LOWE,
an individual,

        Plaintiffs and Appellants,

   v.

STATE OF MONTANA, by and through the
MONTANA DEPARTMENT OF TRANSPORTATION,

        Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. ADV-2008-626
                    Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Jack R. Tuholske, Tuholske Law Office, P.C., Missoula, Montana

                Ryan R. Shaffer, Shaffer Law Office, P.C., Missoula, Montana

        For Appellee:

                Carol Grell Morris, Valerie D. Wilson, Special Assistant Attorneys
                General, Montana Department of Transportation, Helena, Montana

Submitted on Briefs:   November 23, 2011

Decided:   January 17, 2012

Filed:

_____
                         Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Hobble Diamond Ranch, LLC, Robert and Susan Burch, and James Lowe, collectively referred to as the Neighbors unless otherwise specified, appeal from the Findings of Fact, Conclusions of Law, and Order of the First Judicial District Court of Lewis and Clark County, Montana, affirming the Montana Department of Transportation's (DOT) decision to issue billboard sign permits under the Montana Outdoor Advertising Act (MOAA). The Neighbors seek removal of two billboards, arguing that the billboards are not in compliance with MOAA, DOT's granting of the permits was unlawful, and the billboards are a public nuisance. We affirm.

## ISSUES

¶2 The Neighbors raise six issues on appeal. We briefly address each issue; however, a restatement of the dispositive issue is:

¶3 Whether the District Court erred in upholding DOT's finding that an entire 270-acre parcel of land was being used for a "commercial or industrial activity," thereby justifying the issuance of two outdoor advertising permits under MOAA.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In 1998, Herbert and Christopher Bue (Bues) purchased an unzoned 270-acre parcel of land along Interstate 90 in Sweet Grass County, Montana. That year they began operating C & H Construction on the property, doing primarily earth moving and excavation work. In 1999 they began gravel production on the property, later built a 3,200 square foot building for the business, and utilized connections to two power utilities.

2

¶5    Robert and Susan Burch (Burches) purchased the Hobble Diamond Ranch in 1998. The Ranch is north of the Bues' property and separated from it by Interstate 90, the frontage road, the railroad, and the Yellowstone River. The Burches own approximately 27,000 acres of Hobble Diamond Ranch grazing land and approximately 500 acres of other grazing land. They reside on the property for approximately three months each year. James Lowe owns approximately 250 acres north of the Bues' property, which is also separated by Interstate 90, the frontage road, and the railroad.

¶6    In 2000, the Bues had their property east of the gravel pit drilled for gravel samples, which indicated 1.5 million cubic yards of gravel. The following year, the Bues contracted with Riverside Construction, which obtained an initial open-cut mining permit from the Montana Department of Environmental Quality (DEQ); the permit was then transferred to the Bues. Later, DEQ approved two permit modifications, allowing C & H Construction to expand its gravel mining in 2002 and extending the reclamation deadline to October 2016. The gravel mining operation began on 12.6 acres and expanded to 23.9 acres. The Bues intend to continue to expand the gravel mining operation.

¶7    Lamar Outdoor Advertising Corporation (Lamar) discussed with the Bues the possibility of placing billboards on their property. Lamar submitted two permit applications to DOT on October 13, 2006, for two outdoor advertising billboards to be placed on the Bues' property along Interstate 90 near milepost 384. Though the application forms stated "THIS FORM MUST BE COMPLETED IN FULL" and "THIS DRAWING MUST BE COMPLETED IN FULL," the applications were incomplete and missing required information. Some of the missing information was later filled in by

3

DOT, though certain information, such as the distance between the qualifying activity and the proposed sign location, was never added to the applications. The applications were never returned to Lamar for completion.

¶8    On November 1, 2006, Allen Hagadone, DOT's Compliance Specialist of the Outdoor Advertising Control section (OAC) of MOAA, did a site inspection of the Bue property, and noted that the sign locations were not staked and that their locations were too far from the gravel pit area. Under § 75-15-103(14), MCA, the unzoned commercial or industrial area where signs may be located must be along the highway and within 600 feet of a commercial or industrial activity. Accordingly, Hagadone called and told Lamar that the location did not qualify for a permit because it was "to [sic] far from the qualifier or the gravel pit." A few days later Hagadone met with Lamar at the site and showed Lamar where the billboards could legally be placed.

¶9    Hagadone and DOT's Outdoor Advertising Coordinator, Patrick Hurley, met with Lamar and Herbert Bue on site on December 5, 2006. After measurements were taken and a sketch was made, Hurley determined that C & H Construction's industrial or commercial activities involved the entire 270 acres, including both the construction business and the mining operation. After consulting with Hurley, Hagadone agreed and determined that because the permit applications were for the entire 270 acres, and the entire 270 acres was deemed to include industrial or commercial activities, it was not necessary to measure 600 feet from any particular feature. On December 7, 2006, DOT granted the permits to Lamar for the locations where the billboards are currently located.

4

¶10   In April and May 2007, Lamar placed two billboards on the Bues' property at a total cost of approximately $75,000. The face of each billboard is 720 square feet, the billboards are 500 feet apart from each other, and the closest sign is 2,380 feet from the actual gravel pit. The billboards are lit for several hours every evening until 11:30 p.m. In early 2008, Lamar constructed shields around the lights to reduce brightness in response to complaints from the Neighbors that the lights interfered with the natural evening light and night stars. Hurley made another site visit on December 16, 2008, and confirmed the signs conformed to DOT's requirements.

¶11   Lamar has a lease with the Bues for keeping the billboards on the Bues' property for $1,500 per year for five years and $1,750 per year for an additional five years, for a total lease term of ten years. It would cost Lamar approximately $20,000 to remove or relocate each billboard.

¶12   The Neighbors filed a complaint against DOT on July 14, 2008, and an amended complaint on May 18, 2009, for removal of the billboards. Among other things, the Neighbors alleged that: (1) DOT's decision to issue permits for the billboards was arbitrary, capricious, unsupported by evidence, and in violation of MOAA and its implementing regulations; (2) the billboards constituted a public and private nuisance; and (3) DOT violated the Neighbors' right of public participation. The District Court dismissed the public participation claim and this decision is not challenged on appeal.

¶13   The parties engaged in discovery. The Neighbors complained that DOT officials introduced evidence during discovery that was outside of the material included in the administrative record at the time the permits were approved. Following the conclusion of

discovery, a non-jury trial was conducted on October 12 and 13, 2010. On March 8, 2011, the District Court affirmed DOT's decision. In its Findings of Fact, Conclusions of Law, and Order, the court found that the billboards complied with MOAA and that the Neighbors failed to establish that DOT acted arbitrarily, capriciously, or in violation of the law when it issued the two billboard permits. The court also concluded that the Neighbors failed to prove their nuisance claim.

¶14 The Neighbors appeal.

## STANDARD OF REVIEW

¶15 Our review of a district court's conclusions of law is plenary. *Kiely Constr. L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 69, 312 Mont. 52, 57 P.3d 836. "When [a] district court's decision is based on review of an agency action, [the Montana Administrative Procedure Act (MAPA)] governs our review," and our scope of review is limited. *Citizens Awareness Network v. Mont. Bd. of Envtl. Rev.*, 2010 MT 10, ¶ 13, 355 Mont. 60, 227 P.3d 583; *N. Fork Preservation Assn. v. Dept. of State Lands*, 238 Mont. 451, 465, 778 P.2d 862, 871 (1989). We review the record to determine if the agency acted arbitrarily, capriciously, or unlawfully. *N. Fork*, 238 Mont. at 458-59, 778 P.2d at 867; *Kiely Constr.*, ¶ 69 (citations omitted).

## DISCUSSION

¶16 *Whether the District Court erred in upholding DOT's finding that an entire 270-acre parcel of land was being used for a "commercial or industrial activity," thereby justifying the issuance of two outdoor advertising permits under MOAA.*

¶17 The Neighbors argue on appeal that the District Court erroneously found the entire 270-acre Bue property was the site of an "industrial activity" when only 3% of the land

6

was in fact used for mining. DOT counters that the evidence before it was consistent with the decision it made, and the determination that the entire 270-acre property was used for "industrial activity" was legitimate. DOT also argues that the evidence considered by the District Court was properly admitted so as to allow the court to determine what DOT knew at the time of its decision, and to determine if the decision was arbitrary, capricious, or unlawful.

¶18 Billboards along interstate highways in Montana are regulated under MOAA. The purpose of the regulation is "to promote the safety, convenience, and enjoyment of travel on and protection of the public investment in highways within th[e] state and to preserve and enhance the natural scenic beauty or aesthetic features of the highways and adjacent areas." Section 75-15-102, MCA. Generally, outdoor advertising in proximity to highways is prohibited under MOAA unless an exception applies. MOAA states:

> (1) Outdoor advertising may not be erected or maintained that is within 660 feet of the nearest edge of the right-of-way and that is visible from any place on the main-traveled way of an interstate or primary system, except:
>
> .   .   .
>
> (e) signs, displays, and devices located in *unzoned commercial or industrial areas*, which areas must be determined from *actual land uses* and by agreement between the department and the secretary and defined by rules adopted by the commission. The exception granted by this subsection is limited to two signs and may not apply to signs, displays, and devices located within an unzoned area in which the commercial or industrial activity used in defining the area has ceased for a period of 9 months.
>
> .   .   .
>
> (2) Outdoor advertising authorized under subsections (1)(a), (1)(d), and (1)(e) must conform with standards contained in and must bear permits required in rules that are adopted by the commission and this part.

7

(3) Outdoor advertising may not be erected or maintained beyond 660 feet of the nearest edge of the right-of-way of an interstate or primary highway outside of an urban area if the outdoor advertising is or was erected with the purpose of its message being read from the main-traveled way and visible from the main-traveled way unless the outdoor advertising meets the criteria of subsections (1)(a), (1)(b), or (1)(c). If the outdoor advertising meets that criteria, it must conform with standards contained in rules that are adopted by the commission and with this part.

Section 75-15-111(1)(e), (2), (3), MCA (emphasis added). The issue before us is whether the entire 270 acres is an unzoned commercial or industrial area based on the actual uses of the land.

¶19 Pertinent definitions for this section include:

(1) "Commercial or industrial activities" means those activities generally recognized as commercial or industrial by zoning authorities in this state, except that none of the following activities are considered commercial or industrial:
(a) agricultural, forestry, grazing, farming, and related activities, including wayside fresh produce stands;
(b) transient or temporary activities;
(c) activities not visible from the main-traveled way;
(d) activities conducted in a building principally used as a residence;
(e) railroad tracks and minor sidings;
(f) activities more than 660 feet from the nearest edge of the right-of-way.
        .   .   .

(14) "Unzoned commercial or industrial area" means an area not zoned by state or local law, regulation, or ordinance that is occupied by one or more commercial or industrial activities, other than outdoor advertising, on the lands along the highway for a distance of 600 feet immediately adjacent to the activities.

Section 75-15-103(1), (14), MCA. The Administrative Rules of Montana (ARM) further provide:

(7) "Commercial or industrial activity" is defined at 75-15-103, MCA, and has the additional meaning of an activity which is permitted

8

only in a commercial or industrial zone or a less restrictive zone by the nearest zoning authority within the state, except that none of the following is a commercial or industrial activity:

> (a) any erection or maintenance of an outdoor advertising structure;
>
> (b) any agricultural, forestry, ranching, grazing, farming or related activity, or operation of a wayside stand for sale of fresh fruit, their products, or produce;
>
> (c) any activity normally and regularly in operation less than three months of the year;
>
> (d) any transit or temporary activity;
>
> (e) any activity not visible from the traffic lanes of the main traveled way;
>
> (f) any activity more than 660 feet from the nearest edge of the right-of-way;
>
> (g) any activity conducted in a building principally used as a residence;
>
> (h) any operation of railroad tracks, a minor siding or a passenger depot;
>
> (i) any activity that has been in business less than one year.

Admin. R. M. 18.6.202(7) (2007).

¶20 DOT regulates MOAA through its OAC section by issuing permits for qualifying outdoor advertising billboards and enforcing compliance with Montana's outdoor advertising statutes and rules. DOT utilizes an Operations Manual for its permitting and enforcement process. On review, a court is not allowed to stand in the place of a "commission or board to try a matter anew as an administrative body"; the court may only ascertain if the commission or board "stayed within the statutory bounds and has not acted arbitrarily, capriciously or unlawfully." *Langen v. Badlands Coop. State Grazing Dist.*, 125 Mont. 302, 308, 234 P.2d 467, 470 (1951) (citations omitted). Likewise, it is well established that "a court will not substitute a judicial discretion for the discretion of

an officer, board or body acting within the scope of his or its exclusive authority." *Freeman v. Bd. of Adjustment*, 97 Mont. 342, 357, 34 P.2d 534, 539 (1934).

¶21 The MOAA proceeding was not a contested case proceeding under MAPA, as it did not require the "determination of legal rights, duties, or privileges" of a party after the opportunity for a hearing. Section 2-4-102(4), MCA. When an agency such as DOT makes an informal agency decision, we review the decision to determine if the decision is "arbitrary, capricious, unlawful, or not supported by substantial evidence." *Clark Fork Coalition v. Mont. Dept. of Envtl. Quality*, 2008 MT 407, ¶ 21, 347 Mont. 197, 197 P.3d 482; *Skyline Sportsmen's Assn. v. Bd. of Land Commrs.*, 286 Mont. 108, 113, 951 P.2d 29, 32 (1997). When making the factual inquiry about whether an agency decision was arbitrary or capricious, we "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *N. Fork*, 238 Mont. at 465, 778 P.2d at 871 (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 823 (1971)). "This inquiry must 'be searching and careful,' but 'the ultimate standard of review is a narrow one.' " *N. Fork*, 238 Mont. at 465, 778 P.2d at 871 (quoting *Overton Park*, 401 U.S. at 416, 91 S. Ct. at 823). Furthermore, "[w]e cannot substitute our judgment for that of the [agency] by determining whether its decision was 'correct.' " *N. Fork*, 238 Mont. at 465, 778 P.2d at 871.

¶22 It is undisputed that the 270-acre parcel is not zoned within the meaning of this chapter. DOT concluded that the entire parcel contained commercial or industrial activity. The Neighbors argue that DOT made this decision based on the future plans of

10

the Bues rather than on the "actual land uses." Section 75-15-111(1)(e), MCA. However, it is evident that DOT used the applications (though incomplete), multiple site visits, information received from the parties, and the combination of the construction and mining operations on the property to reach the conclusion.

¶23 The Neighbors argue that based on the mining permit the Bues hold, they are allowed to mine only a small area of the entire parcel, and therefore only that small area should be considered in determining the location of the commercial or industrial activity. The District Court rejected this argument. After considering all the evidence and exhibits, it concluded that the mining operation was not limited to the actual gravel pit, but also encompassed an area for crushing and storing the material, the access roads into the site, and an area for storing equipment. The court further concluded that the business activities near the location of the billboards included both the mining operation and the construction business, and that these comprised "industrial or commercial" activities within the meaning of MOAA. It therefore concluded that DOT's decision to issue the billboard permits was not arbitrary, capricious, or in violation of the law.

¶24 We cannot conclude that the District Court's ruling upholding the DOT decision was arbitrary, capricious, or unlawful. As we stated in *Silva v. City of Columbia Falls*, 258 Mont. 329, 335, 852 P.2d 671, 675 (1993), "a review by a district court or this Court of an action under the 'arbitrary and capricious' standard does not permit a reversal merely because the record contains inconsistent evidence or evidence which might support a different result. Rather, the decision being challenged must appear to be

11

random, unreasonable or seemingly unmotivated, based on the existing record." Because the District Court decision does not reach this level, we decline to disturb it.

¶25 The Neighbors also assert that the commercial or industrial activity taking place on the property is temporary and therefore should not be considered a commercial or industrial activity according to § 75-15-103(1)(b), MCA. However, as noted by the District Court, MOAA does not define "temporary." To qualify as an unzoned commercial or industrial area under Admin. R. M. 18.6.203(1)(c) (2007), the commercial or industrial activity must have been in business at least one year before the area may qualify as a commercial or industrial area. The construction and mining activities have both continued for more than one year; therefore the District Court did not err in concluding that they were not "temporary" according to the ARM.

¶26 The Neighbors also argue that the billboard permit applications were incomplete and should have been returned to Lamar for completion, rather than having DOT accept the incomplete applications and subsequently modify and approve them. DOT's Outdoor Advertising Control Operations Manual (Manual) describes the application process for a billboard permit. The Manual states that it is "imperative that the proposed sign meets local government zoning or land use control," and that DOT "personnel are not allowed to interpret local zoning or land use requirements for the applicant." It goes on to state that "[i]f the proposed sign site is unzoned, it is the right-of-way agent's responsibility to determine whether the area qualifies for the placement of a sign and the issuance of a permit. It is the responsibility of the applicant to identify the activity presumed to qualify the area for the placement of a sign." If a permit application is incomplete, the Manual

12

directs DOT to return it "to the applicant together with an explanation of the deficiencies."

¶27 On review, the District Court concluded that "[a]lthough the applications were incomplete on their face," they were in "substantial conformance" with DOT's regulations and were "substantially complete." DOT obtained the necessary information that the court deemed "sufficient" to make an informed decision, and then made an "informed decision about whether permit requirements were satisfied." We will not disturb this conclusion.

¶28 The Neighbors also complain that the District Court unlawfully received evidence at the trial that was outside the administrative record and relied on post-decision justifications for DOT's decision. While review of an agency action is generally limited to the record before the agency at the time of its decision, a reviewing court may accept new evidence in order to clarify matters that occurred before the agency, and to determine whether the agency properly considered all relevant factors in reaching its decision. *Aspen Trails Ranch, LLC v. Simmons*, 2010 MT 79, ¶ 53, 356 Mont. 41, 230 P.3d 808 (citing *Skyline Sportsmen's Assn.*, 286 Mont. at 113, 951 P.2d at 32). We conclude the court did not abuse its discretion in admitting evidence for these purposes.

¶29 Finally, the Neighbors state public nuisance claims, citing § 75-15-133, MCA, for the proposition that outdoor advertising which does not conform to the requirements of MOAA is a public nuisance. Because we will not disturb the decision of DOT and the District Court to the effect that the permit applications were in conformance with MOAA, the public nuisance claims of the Neighbors must fail.

¶30     We conclude that DOT based its decision that the entire 270-acre parcel included commercial or industrial activity on sufficient evidence.  We do not find this decision or DOT's subsequent decision to issue the two billboard permits arbitrary, capricious, or unlawful, and we will not substitute our judgment for that of DOT or the District Court.

**CONCLUSION**

¶31     For the foregoing reasons, we affirm the decision of the District Court.


/S/ PATRICIA COTTER


We concur:

/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON


Justice Michael E Wheat dissents.

¶32     I would reverse on the grounds that the DOT failed to establish, during its permit application review process, a reasonable basis for designating the entire 270 acres as a qualifying commercial or industrial site.  The record is clear that the primary qualifying activity (gravel mining) is confined to an area of approximately 23 acres in the northwest corner of the property.  The billboard signs are located more than 2,000 feet away from the boundary of the gravel mining operation.  Because billboards along interstate highways must be located within 600 feet of a qualifying unzoned commercial or industrial area, the only way to approve the location of the signs in this case was to qualify the entire 270 acres.

14

¶33 In affirming the DOT's designation of the entire 270 acres as a qualifying commercial or industrial site, the District Court relied on the following findings of fact:

(1) The landowners operate C&H Construction on the property, which includes a gravel mining operation. The construction business is primarily earth moving and excavation;

(2) C&H Construction is connected to two power utilities and has built a 3,200 square foot building that is part of the construction business;

(3) The landowners had their land just east of the current gravel pit drilled for gravel samples. The gravel mining operation started out on 12.6 acres and subsequently expanded another 11.3 acres. *The land owners anticipated expanding the operation to accommodate new projects*;

(4) Evidence indicates that *the land owners have, since beginning their mining operation, intended to continue to operate and expand their gravel mining operation into the future*;

(5) *Placing the billboards within 600 feet of the gravel pit* (as required by § 75-15-111(1)(e), MCA, and Admin. R. M. 18.6.203) *would have interfered with the gravel mining operation, as well as its anticipated expansion. It would have required the costly relocation of the billboards with every expansion of the mine*; and

(6) The area between the actual pit and the billboards (2,380 feet) is used for storage of equipment for C&H Construction and also includes a spring being developed for use by C&H. The entire area around and at the location of the billboards is used for the construction business, which includes the mining operation, areas for storage of construction equipment, and access roads.

¶34 There is no evidence to support the conclusion that the billboards, if placed within 600 feet of the gravel pit, would interfere with the operation of the pit or would need to be moved every time the pit expanded, if ever. Furthermore, there is no evidence that the

15

entire distance between the pit and the billboards is needed to park construction equipment.

¶35 Section 75-15-111(1)(e), MCA, prohibits placement of billboards within 660 feet of the interstate highway, except "in unzoned commercial or industrial areas, *which areas must be determined from actual land uses* and by agreement between the department and the secretary and defined by rules adopted by the commission. . . ." (Emphasis added.) Section 75-15-103(14), MCA, defines an unzoned commercial or industrial area as "an area not zoned . . . that is occupied by one or more commercial or industrial activities, other than outdoor advertising, *on the lands along the highway for a distance of 600 feet immediately adjacent to the activities*." (Emphasis added.)

¶36 There is no dispute that the existing gravel pit (approximately 23 acres) in the northwest corner of the property qualifies as a commercial or industrial area for purposes of the statute. The question is whether the entire 270 acres qualifies, and on the basis of the evidence in the record, I maintain it does not. Therefore, I would reverse the District Court decision and remand the case back to the DOT for additional evidentiary hearings related to the area of land that would qualify as a commercial or industrial area.

/S/ MICHAEL E WHEAT

16